## GREEN *v.* CLYDE.

Opinion delivered October 29, 1906.

1. PUBLIC LAND—PATENT ISSUED BY MISTAKE OR FRAUD.—Where land officers of the United States through mistake, fraud or inadvertence have issued patents to the wrong person, he will be declared a trustee for the true owner. (Page 395.)

2. SAME—PROTECTION OF INNOCENT PURCHASER.—One to whom a patent from the United States has been issued by mistake, fraud or inadvertence and who is in actual possession of the land so conveyed

can convey title to an innocent purchaser for a valuable consideration. (Page 396.)

3. APPEAL—NEW ISSUE.—Where, in a suit to recover land, plaintiff did not ask in the trial court for an accounting of rests, it is too late to ask for such relief on appeal. (Page 396.)

Appeal from Garland Chancery Court; *Leland Leatherman,* Chancellor; affirmed.

*White & Altheimer* and *Rose, Hemingway, Cantrell & Loughborough,* for appellants.

1. The original title to the land in dispute was in the United States. 26 Ark. 168. And the record title is in appellants.

2. The evidence fails to establish either fraud or mistake in the award of the commissioners.

3. The award of the commissioners was final. 111 U. S. 289; 158 U. S. 166; 44 Pac. 807; 34 Ark. 220.

4. Green is not estopped by his own conduct and admission to claim the land in dispute. Clyde had equal access to the records and equal opportunity to learn the true location and boundary of the tract as Green had. 19 Ark. 531; 46 Ark. 337; 47 Ark. 335; 15 Ark. 55.

*Wood & Henderson,* for appellee.

1. The commissioners made a mistake in awarding to Cutter that portion of the land embraced in lot 3, block 103, not claimed by him, instead of awarding it to Anna K. Morris, who did claim it. Where one party has acquired the legal title to property to which another has a better right, equity will convert him into a trustee of the party having the better right and compel him to convey the legal title. 111 U. S. 276; 147 U. S. 47; 35 Pac. 91; 33 S. E. 116; 151 U. S. 420; 145 U. S. 317; 147 U. S. 242; 38 Pac. 1070; 10 Rose, Notes, 806; 54 Ark. 251; 130 U. S. 122; 47 Ark. 203; 5 Rose, Notes, 835; *Ib.* 34; 7 Ballard, Real Estate, 720; 66 U. S. 352.

2. Clyde and Green both derived their rights from the same source, that is, from Jones, and Green is estopped to deny Clyde's rights. The obligation created by an estoppel binds the grantor and his privies in estate in blood and in law. 11 Am. & Eng. Enc. Law, 394; 49 Am. Dec. 379; 2 Herman on Estoppel, 719 *et seq.;* 11 How. 297; 21 How. 229; 33 Ark. 201, 202; 1 Greenleaf on Ev. 523.

HILL, C. J. Clyde, Jr., a minor, by next friend, brought suit for a tract of land claimed to have been inherited from his father, Clyde, Sr., against Mariah V. Greene and Peter Greene, her husband, and some vendees of theirs for a part of the lot. There is little dispute over the salient features of the case.

The land was a part of the Hot Springs Reservation, and was owned by the United States Government. Congress passed an act in 1877 for its disposition, and created the Hot Springs Commission. Parties who had made improvements upon the Reservation were permitted to purchase the land containing the improvements from the Government; and the commission was authorized to determine the rights of occupants and claimants as to what each should be entitled to purchase and to fix prices therefor.

One Jones fenced several acres of land on the Reservation, and his improvement was the common source of title to these litigants. Jones sold one tract to Anna K. Morris, another to J. T. Morris, and another to Charles Cutter.

The Anna K. Morris claim fronted on a road, afterwards called "Hawthorne Street," and extended to another road called "New Courthouse Road;" the J. T. Morris claim fronted on this latter road, and extended along the Anna Morris claim and to its rear from Hawthorne Street. The Morris tracts may be treated as one in this case. Just east of the Ann Morris tract was the Cutter tract, extending along Hawthorne Street to Thornton Ferry Road, afterwards called Ouachita Avenue.

Each of these tracts was purchased from Jones by said parties, and there was no conflict in them, and no overlapping of lines. Application was made to the commission by the Morrises and by Cutter for right to purchase their respective claims, and a plat was attached to each petition showing the land claimed by each claimant, and these plats showed no conflict in the three claims. The Morrises sold part of their tract to Clyde, Sr., the father of the plaintiff in this suit.

The Clyde tract was on the east end of the Morris tracts, and had a frontage of 126 feet and 8 inches along Hawthorne Street, and ran back through both Morris tracts to the north line of the J. T. Morris tract. Clyde went into possession of this tract, erected a dwelling house upon it, which he occupied with

his wife and only child, this plaintiff. While occupying this tract, he built a clapboard fence along his east line, between him and the Cutter, afterwards the Greene tract. Clyde died in his house on the tract, and his widow shortly afterwards went to Missouri, carrying the infant with her. She retained possession through tenants of the tract for a year or more after her husband's death, and was then dispossessed by Greene.

Maria V. Greene purchased the Cutter title, and went into possession of the tract, and occupied it. She conveyed to her husband, Peter Greene, an undivided half interest. Peter Greene seems to have been the active party in the matter, Maria V. Greene only appearing as holding the title acquired by Peter Greene. Some time after the commissioners had made their awards of the respective rights of these claimants, an uncle of Clyde, Jr., offered to pay his (young Clyde's) part of the purchase price from the Government, and there seems to have been an understanding that either Clyde, Jr's., uncle or Peter Greene were to make payment when the Morrisses paid their part, so that the payment of the original Jones tract should be made at one payment. Without the knowledge of Clyde's relatives, Peter Greene made the payment to the Government, covering both his and the Clyde tract.

The commissioners widened the Thornton Ferry Road 15 feet · on the west side thereof, thereby cutting off that amount from the east end of the Cutter (or Greene) tract.

In conveying the land, for some reason not shown in the record and not explained, the commissioners did not follow the description of the land as claimed by these respective claimants, but described it in lots, not theretofore named, and gave a dimension to the lots different from that set forth in the respective plats filed by these claimants. The Cutter or Greene lot was extended back over the Clyde lot, and its west line was just beyond the Clyde home, thus throwing Clyde's home and all east of it to the clapboard fence in the Cutter or Greene tract All that was left of the Clyde lot was a narrow strip along the west line. It does not appear that Peter Greene realized this at the time, or at least he made no assertion of right under it. His first assertion of right (unless it be his surreptitious payment of the purchase price) was to claim a right to extend his back line 12 feet

over Clyde's clapboard fence owing to the commissioners having cut off 15 feet of the other end of his lot. This claim he enforced some time after the death of the senior Clyde. When one Kiser, under the employ of an aunt of young Clyde's, was repairing this fence, Greene stopped him, and asserted his claim to at least 12 feet on account of his front being clipped 15 feet. Shortly after this, about 1881, two years after the death of Clyde, Sr., Greene took possession of the remainder of the Clyde tract included in the deed from the Government to his wife, and remained continuously in possession since.

The case is not without precedent. Ahab wanted Naboth's vineyard, which was hard by his palace. "And Ahab spake unto Naboth, saying, 'Give me the vineyard, that I may have it for a garden of herbs, because it is near unto my house; and I will will give thee for it a better vineyard than it, or, if it seem good to thee, I will give thee the worth of it in money.'" 1 Kings, ch. 21, 1, 2. But this modern Ahab did not offer another vineyard nor money for this one, and, against protests from relatives and friends of the infant Clyde, he proceeded to possess himself of it, and continued to hold it until the decree appealed from dispossessed him of part thereof and vested it in the young Clyde as his inheritance.

The right of Greene under the patent from the Government is not controlled by the doctrine announced in *Rector* v. *Gibbon,* 111 U. S. 276, where it was held that the award of the Hot Springs Commission was final as to matters depending on conflicting evidence as to extent of occupation and value of improvements, etc., because there was no conflict in the evidence; no overlapping claims, and in fact nothing before the commission but the establishment of the respective title of each of the claimants under the Jones improvements, a question common to all these claims and established by the same evidence. The case is governed by the established principle that where a patent to land is issued, by mistake, fraud, inadvertence, or other cause, to a party not entitled to it, he will be declared trustee for the true owner. This salutary principle has often been applied where land officers of the United States have issued patents to the wrong party through mistake, fraud or inadvertence. *Johnson* v. *Towsley,* 13 Wall. 72; *Rector* v. *Gibbon,* 111 U. S. 276; *Cornelius* v. *Kes-*

*sel,* 128 U. S. 456; *Monroe Cattle Co.* v. *Becker,* 147 U. S. 47.

Appellee cross-appeals as to adverse judgment for 12 feet of land. The facts were these: Greene sold this 12 feet with other to McDonald and Williams in 1890, and they sold to McCafferty. These sales appear for a valuable consideration, and there is no evidence of notice of the defects in Greene's title shown as against these purchasers. He and his wife were in actual possession and under the legal title. It is true that the infant Clyde had a cause in equity to hold the Greenes as trustees for him; but, until he brought home notice through suit or otherwise of an equitable right, the Greenes were clothed with the legal title and actual possession under it, and these vendees were innocent purchasers and protected as such. *Sorrells* v. *Sorrells,* 4 Ark. 296.

Appellee also insists on cross-appeal that he should have judgment for rents. The correct judgment should have been to have charged the Greenes with rental value of the land and credited them with the proper proportion of the purchase price paid the Government, with interest, and for taxes. But appellee did not ask for rents in the complaint, and the decree ignored this accounting, and the appellee does not appear to have insisted upon such accounting in the trial court, and it is too late to ask it for the first time here.

The decree is in all things affirmed.