LEONARD *v.* LUTHER.

Opinion delivered April 4, 1932.

*Hal L. Norwood,* Attorney General, *Robt. F. Smith,* Assistant, *John C. Ashley, J. Paul Ward* and *Ben B. Williamson,* for appellant.

*Hugh U. Williamson* and *Coleman & Reeder,* for appellees.

BUTLER, J. This action is a proceeding for a writ of mandamus to compel the appellees to deliver to appellant's deputy the tax books and other records belonging to the collector's office in and for Stone County. From a denial of the prayer of appellant's petition is this appeal.

We pass over the motion to dismiss the appeal for alleged failure to comply with rule 9 of this court, preferring to dispose of the case upon its merits.

The facts as stipulated in the court below are:

"That Sam Johnson is the legally elected and qualified sheriff of Stone County, Arkansas, having been elected at the November general election, 1930, for the term to expire December 31, 1932.

"That on the 19th day of November, 1931, the court made an order suspending the said Sam Johnson from office as sheriff and collector by the circuit court of Stone County, after five indictments had been returned against him by the grand jury of said county. A copy of which order is attached hereto and made a part hereof.

"That the said Sam Johnson has never been tried on any of said indictments, but that the same are pending for trial at the May term, 1932, of said circuit court.

"That on the 25th day of November, 1931, after the suspension of the said Sam Johnson on the 19th day of said month, the Governor of the State appointed and commissioned W. M. Brewer as sheriff and collector of Stone County, Arkansas, to serve as such during the suspension of the said Sam Johnson from the said office pending his trials on said indictments.

"That the said W. M. Brewer made his bond as sheriff and also made bond as collector, said bonds having been filed and approved on the 15th day of December, 1931. A copy of said bond being hereto attached and made a part hereof.

"That the said Sam Johnson, the duly elected collector, failed to file his bond as collector before or by the first Monday in January, 1932, as provided by § 10,031 of Crawford & Moses' Digest, and has never filed any bond up to this time.

"That the plaintiff, Roy V. Leonard, is the duly elected, qualified and acting Treasurer of State for the State of Arkansas.

"That the plaintiff, John B. Gower, was appointed by State Treasurer, Roy V. Leonard, in writing on the 21st day of January, 1932, as special deputy State Treasurer to collect the taxes of Stone County, Arkansas, for the current year, pursuant to § 10,034 of Crawford & Moses' Digest.

"That on the 22d day of January, 1932, the said Roy V. Leonard, as Treasurer of the State of Arkansas, made demand on the said T. E. Luther, the duly elected and qualified, acting county clerk of Stone County, Arkansas, and also the said W. M. Brewer, for all taxbooks, records, papers, receipts and moneys belonging to the collector's office of Stone County, Arkansas, for the year 1932, upon which the taxes for the year 1931 had been extended, and from which the taxes for the year 1931 were to be collected, and that the said T. E. Luther and the said W. M. Brewer, each and both, refused said demand, and refused to turn over said records, books, papers and moneys and still refuse to do so."

In addition to this stipulation appellee Brewer testified as follows: "I was appointed sheriff and collector in November, 1931, and made a sheriff's bond at that time. I didn't make a collector's bond until December 15th. That is the only bond I filed as collector. I was not reappointed collector after the first Monday in January. I have never filed another bond. I have never been reappointed collector."

The validity of the appointment of the appellee Brewer by the Governor depends upon whether or not there was a vacancy in the office of collector of

revenues for Stone County on the date of his appointment. The authority for the circuit court to suspend Sam Johnson from the performance of his duties as collector of revenues must be found in § 27 of art. 7 of the Constitution and in the enabling act to that section, now § 10,035 of Crawford & Moses' Digest.

Section 27, art. 7, Constitution: ''The circuit court shall have jurisdiction upon information, presentment or indictment to remove any county or township officer from office for incompetency, corruption, gross immorality, criminal conduct, malfeasance, misfeasance or nonfeasance in office.''

Section 10,335, Crawford & Moses' Digest: ''Whenever any presentment or indictment shall be filed in any circuit court of this State against any county or township officer for incompetency, corruption, gross immorality, criminal conduct amounting to a felony, malfeasance, misfeasance or nonfeasance in office, such circuit court shall immediately order that such officer shall be suspended from his office until such presentment or indictment shall be tried. Provided, such suspension shall not extend beyond the next term after the same shall be filed in such circuit court, unless the cause is continued on the application of the defendant.''

It was decided in the case of *Patton* v. *Vaughan,* 39 Ark. 211, that ''article 7, § 27, of the Constitution of 1874, empowering circuit courts to remove county and township officers upon indictment, etc., and the act of March 9, 1877, to regulate filling of vacancies in office, relate to the elective township and county officers provided for by the Constitution. * * * The only constitutional or statutory provisions to which we have been referred as bearing on this subject are § 27 of art. 7, of the Constitution of 1874, vesting jurisdiction in the circuit court to remove county and township officers upon indictment or information and the act of March 9, 1877, to regulate the filling of vacancies in office. But these

obviously relate to the elective county and township officers created by the Constitution itself.''

In *Falconer* v. *Shores*, 37 Ark. 386, it was said: ''Before the adoption of the present Constitution the office of collector of taxes was statutory. The statute in force when the Constitution was adopted provided that the sheriff of each county should be *ex-officio* collector, and before entering upon his duties as collector should give bond before the first Monday of January of each year, etc. Gantt's Digest, §§ 5157-9.

''Section 46, article 7, of the Constitution provides that the qualified electors of each county shall elect one sheriff, who shall be *ex-officio* collector of taxes, unless otherwise provided by law, for the term of two years, thereby leaving the office of collector under legislative control.

''A person who is sheriff and collector, under existing laws, holds two distinct offices, and is required to give bond as sheriff and also to give bond as collector. Ex parte *McCabe*, 33 Ark. 396.''

''It is well settled that where the Constitution creates or recognizes an office, and declares that the incumbent may be removed in a specified manner or for specified reasons, the Legislature cannot constitutionally provide by statute for his removal for any other reason or in any other manner.'' Throop on Public Officers, p. 343, quoted in *Speer* v. *Wood*, 128 Ark. 186, 193 S. W. 785.

In the case of *Remley* v. *Matthews*, 84 Ark. 598, 106 S. W. 482, the facts were that Strong, the regular acting sheriff and *ex-officio* collector of Chicot County, was suspended from office on the 20th day of October, 1906, pending his trial on eighteen indictments which had been returned and filed against him charging him with malfeasance in office. The Governor appointed E. P. Remley as sheriff to act during the vacancy caused by the suspension of Strong. Remley filed his bond and oath of office and entered upon the duties thereof. He failed to

make a collector's bond prior to the first Monday in December, 1906. Strong also failed to give a collector's bond within the time prescribed by law, and on March 8 following resigned his office as sheriff while still under indictment. On March 9, 1907, Remley was again appointed sheriff by the Governor and filed his bond as collector on the 13th of March, 1907. A special election was called for the election of sheriff to be held on April 15, 1907, at which C. M. Matthews was elected sheriff and duly commissioned, and, having duly qualified on the 29th day of April, demanded of Remley the office of collector of Chicot County and the books and papers belonging thereto. This was refused, and the question before the court was, who was entitled to the office of collector—whether Matthews by virtue of his election at the special election, or Remley by virtue of his appointment on the 13th day of March, 1907?

In holding that Remley was entitled to the office, and not Matthews, this court said: "Strong failed to give the bond of collector within the time prescribed by law, and upon a certificate by the clerk to that effect the Governor appointed Remley to that office, pursuant to § 7042 of Kirby's Digest. This was a valid appointment, for § 46, art. 7, of the Constitution leaves the office of collector under legislative control. *Falconer* v. *Shores,* 37 Ark. 386. In that case the court said: 'Upon the failure of a sheriff to give bond as collector of revenue within the time prescribed by law, the Governor is required, upon notice of such failure from the county clerk, to declare the office vacant and fill it by appointment.'

"We are now brought to consider the length of his term. As we have seen, appellant was appointed pursuant to § 7042 of Kirby's Digest. Section 7044 provides that he shall hold the office until the next general election, and until his successor is elected and qualified. In the case of *Alston* v. *Falconer,* 42 Ark. 114, it is held that where a person is appointed collector pursuant to the statutes, *supra,* he is by law entitled to hold it until

the next general election and until his successor is elected and qualified.''

■ On the authority of these cases, it appears to be the contention of counsel for the appellant that the office of collector of revenues is not an elective county office within the meaning of § 27, art. 7, and therefore a sheriff, acting *ex-officio* as collector, although suspended pending the hearing of indictments returned against him, may continue to perform the duties of collector of revenues during the time of his suspension as sheriff; that is to say, the order of the court temporarily removing him as sheriff does not remove him as collector, and consequently an appointment by the Governor of one to serve as sheriff does not carry with it the right to qualify and act as collector.

The cases heretofore cited are relied on to support this contention and especially that of *Lemley* v. *Matthews, supra.* In none of these cases was the point here involved before the court, and they do not justify the contention made. The language in *Lemley* v. *Matthews* thought to warrant the interpretation suggested by counsel is:

''Section 7993 provides for the removal of such officer upon conviction. It will be observed that Strong was not removed from the office of sheriff, but was only suspended pending the indictments against him. Remley was appointed sheriff on the 20th day of October, 1906, under § 7995 of Kirby's Digest, authorizing the Governor to temporarily appoint an officer in the place of the suspended officer.

''This presents for our consideration the question, who was entitled to qualify as collector of the revenue of Chicot County in 1906, Strong or Remley?

''In the case of *Crowell* v. *Barham,* 57 Ark. 197, 21 S. W. 33, COCKRILL, C. J., said: 'The offices of sheriff and collector, though usually exercised by the same person, are as separate and distinct as though held by different incumbents. Ex parte *McCabe,* 33 Ark. 396;

*Falconer* v. *Shores,* 37 Ark. 306. If the sheriff became collector by reason of qualifying as sheriff, there would be strong ground for contending that his general deputy was also deputy collector, as was held in the case of *People* v. *Otto,* 77 Cal. 45, 18 Pac. 869. But under our statute the sheriff becomes collector only when he qualifies as collector. He has the right by virtue of his office to become collector, but he may forfeit the right without forfeiting the office of sheriff. In that event the law authorizes the substitution of another in the office.'

"It seems clear then that Strong, and not Remley, had the right to qualify as collector; for the reason that Strong was still sheriff. He did not cease to be sheriff because of his suspension pending the indictments against him.

"Strong's suspension from the office of sheriff only disabled him from discharging the duties of the office, and did not take away the office itself. Only a removal from office could do that. He was still the sheriff, and by virtue of holding that office had the right to qualify as the collector of revenue."

It is true the order of suspension did not remove the sheriff from office or divest him of any of its incidents among which was the right to act as collector of revenue (*Vaughan* v. *Kendall,* 79 Ark. 584, 96 S. W. 140), but it did serve to render the incumbent incapable of functioning for a time and until the disability was removed. As the giving of a bond is a prerequisite to the performance of the duties of collector (§ 10,028, Crawford & Moses' Digest), and the failure to file it in the time prescribed works a forfeiture of the office (§ 10,031, Crawford & Moses' Digest), it was necessary, in order to preserve his right to resume his duties after the disability of suspension is removed, to make and file the collector's bond. This he still had the right to do, although incapable of acting for a time, and this was all the court meant to say in the language quoted from *Remley* v. *Matthews, supra,* when interpreted in the light of the point decided. It

did not intend to say that upon the filing of such bond he was entitled to perform the duties of collector, notwithstanding his suspension as sheriff, or that Remley, had he qualified as collector, could not.

■ The case at bar does not present the question of the power of the circuit court to remove a collector of revenue as such, but its power to suspend a sheriff under indictment. As the right to collect the revenues is an appanage of the office of sheriff, his suspension carries with it a vacancy for the time in the office of collector which he fills *virtute officii*. Therefore, the order of suspension of the sheriff made by the court created a vacancy in the office of collector, because there remained no one authorized by law to perform its duties during the disability of the sheriff. In this situation § 10, 338, Crawford & Moses' Digest, becomes effectual: "Whenever any officer shall be suspended from office on account of any presentment or indictment pending against him, the Governor may temporarily appoint an officer in his place, who shall hold until the disability of the officer so suspended is removed, or an election to fill the vacancy occurs, in case there is a judgment of removal."

Johnson failed to make and file his collector's bond, although he was entitled to do so after the order of suspension to preserve his rights as collector, in the event of the removal of his disability. The failure on his part was not certified by the clerk to the Governor, and, no appointment being made to fill the vacancy occasioned by such failure, the Treasurer of State deemed the situation that contemplated in the second sentence of § 10,034 of Crawford & Moses' Digest, which is as follows: "And if from any cause there shall be no collector of taxes in any county of this State, after the expiration of fifteen days from the time fixed by law for such collection to commence in any year, any taxpayer of such county, resident or nonresident, may, at any time before the time fixed by law for the regular collections to close, pay the amount of the State taxes, and of the general county taxes, poll

taxes, district school taxes, taxes levied to pay interest on bonds issued, or to be issued, by a county, city or town in compromise of indebtedness existing at the adoption of the Constitution of 1874, road taxes, levee taxes and municipal taxes directly into the State Treasury, and the receipt of the Treasurer of the State therefor shall be as effective for all purposes as if made by a county collector.''

Appellant, State Treasurer, on this assumption, by special deputy, appellee Gower, demanded of the county clerk and W. M. Brewer, the taxbooks on the 22 day of January, 1932.

The appointment of appellee Brewer as sheriff during the disability of Johnson carried with it all the incidents appertaining to that office among which were the duties of collector and entitled him to perform the same upon the giving and filing of a collector's bond, which he did. The failure of Johnson to file the collector's bond, while working a forfeiture of the office as to him, did not vacate the appointment of Brewer, this appointment remaining effective during the disability of Johnson and until the vacancy was filled in the manner provided by law: §§ 10,031 and 10,038, Crawford & Moses' Digest. There was, therefore, a collector of taxes on the 22d day of January, 1932, the date of appellant's demand for the tax books, and there was no necessity for the evocation of § 10,034, *supra.*

This case does not involve the question of removal or suspension of one holding the office of collector of county revenues by virtue of appointment when a vacancy occurs by the failure of the sheriff to make a collector's bond, or where the office is created by the Legislature separate from the office of sheriff, and we are not required to say what authority would exist for the suspension or removal of the officer under that state of case.

It is suggested that we take judicial notice that the aggregate amount of the taxes to be collected in Stone County is greater than $15,000, and it is argued that

since the collector's bond filed by the appellee Brewer is for that amount only, it is therefore void on its face. This question appears not to have been raised in the court below, either on the trial or in the motion for a new trial, and therefore cannot be considered here. It may be observed, however, that if the bond was defective for any reason, the method is clear for its remedy. Section 10,028, Crawford & Moses' Digest.

It is our opinion that the trial court correctly denied the appellants' petition, and the judgment is affirmed.