## J. L. McENTIRE et al v. Curtis ROBINSON

5-4332                                    421 S. W. 2d 877

### Opinion delivered December 11, 1967
[Rehearing denied January 15, 1968.]

*Brockman & Brockman,* for appellants.

*George Howard Jr.,* for appellee.

Lyle Brown, Justice. Appellants, J. L., J. C., and W. A. McEntire brought this suit against their adjoining neighbor, appellee Curtis Robinson, to establish the boundary line between the parties. The McEntires claimed title up to a line fixed by the county surveyor; Robinson claimed title by adverse possession up to a fence line. When all the litigants completed their testimony the chancellor ruled that the McEntires' complaint

should be dismissed for their failure to meet the burden of proof. That ruling left the location of the boundary line undetermined. The McEntires assert on appeal that the boundary line issue was squarely raised by the pleadings and proof on the issues was submitted; therefore, say the McEntires, it became the duty of the chancellor to establish the boundary.

*The Pleadings.* The McEntires alleged record title to the west half of the involved forty-acre tract. Robinson, their neighbor on the east, was charged with encroaching on the McEntires' land by running a north-and-south fence some twenty feet west of the true line. They alleged the fence to have been built within the last few years. They asked the court to fix the boundary as determined by the county surveyor and to order Robinson's fence removed.

Curtis Robinson answered by claiming title to the disputed strip by adverse possession. He asserted that the fence line had been established with the consent and approval of the McEntires and pleaded estoppel. Robinson asked that plaintiffs' complaint "be dismissed for want of equity and for any and all other proper relief."

*The Evidence.* The McEntires produced two surveyors and six other persons as witnesses. Their testimony was directed to the survey line and their allegation that the fence was not erected by Robinson until 1962. The McEntires testified that the fence was erected without their knowledge or permission.

Curtis Robinson produced seven witnesses. Their testimony centered around these contentions: Robinson lived in a house on his property since 1944; the house was there as far back as 1909 and had since been enlarged north and south; the McEntire survey line ran through the center of the house; a survey was made in 1957 and that line ran some eight steps west of Robinson's house; Robinson built the fence in 1957; the shrubs

on Robinson's side of the fence were first planted in 1944; in 1956 J. L. McEntire and Robinson worked out a line after a survey and the following year the fence was placed on that line; for many years before the fence was erected the parties cultivated up to that line.

*The Chancellor's Findings.* The formal recorded order contained this single finding: "1. That the plaintiffs' Complaint should be dismissed with prejudice." That statement was followed by formal words of dismissal with prejudice. However, at the conclusion of the trial the chancellor pronounced orally his findings. They were recorded and styled "Court's Ruling." The evidence on both sides was reviewed and the conclusion reached that the testimony was "as opposite as the poles." The chancellor concluded with this statement: "In view of the fact that the present survey divides the house in which the defendant has been living since 1944 and in view of the fact that all of his improvements have been made since he acquired this property and set out trees and one thing and another, I can't see anything other than that the plaintiff has failed to meet the burden of proof and therefore the complaint will be dismissed."

The pleadings clearly placed before the court the respective theories of the adjoining owners with regard to a boundary line. Plaintiffs and defendant certainly understood the respective contentions. There were no objections to the pleadings. Proof was pointedly directed toward each allegation. In that situation it was incumbent on the trial court to fully adjudicate those issues pleaded and litigated.

In *Mandel* v. *Peet, Simms & Co.*, 18 Ark. 236 (1856), the trial court sustained a demurrer to nine pleas in abatement and entered a final judgment. This court held the entry of the judgment to be in error because there remained an issue in the case not affected by the ruling on the demurrer. *Hollis* v. *Moore*, 25 Ark. 105 (1867),

was a suit in trespass. The defendant made three separate pleas of defense. Judgment was entered for the plaintiff without defendant's pleas being resolved. For that error the case was reversed and remanded.

In the last century our own trial courts have evidently been careful to avoid the pitfalls reflected in *Mandel* and *Hollis;* otherwise we assume later citations would have been called to our attention. The rule in those cases is sound because it discourages piecemeal litigation. Particularly when a controversy as to possession of real property is in issue and can be concluded in one action, that should be done. Robinson was required by statute to plead his defenses. Ark. Stat. Ann. § 27-1121 (Repl. 1962). Logically, those defenses should be resolved.

We agree with appellants' first point, namely, that "the issue of the boundary line location was squarely raised by the complaint and answer," and should have been resolved. By their second point, the McEntires ask us to hold that the evidence preponderates in their favor. This we cannot do, for the simple reason that the trial court did not resolve the issues of adverse possession and estoppel.

The cause is reversed and remanded with directions to the trial court to fix the boundary line with such certainty that it can be identified by reference to the decree.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent. In the first place, the majority is requiring the court to grant appellants relief not sought by them in the trial court. In the second place, this court is saying that a court of equity *must* decide questions raised by a defendant regardless of whether he asks for affirmative relief in the lower court or on appeal. In these respects, the majority's action is novel and, I submit, improper.

Appellants filed a complaint claiming that appellee was guilty of repeated trespasses upon the lands of the former. They alleged that appellee had erected a fence enclosing a portion of their land. They sought to have appellee enjoined from removing stakes, boundary markers and monuments, and from trespassing on the lands in question. Their prayer as to the boundary was as follows:

"* * * [T]hat defendant be restrained and enjoined from trespassing or coming upon plaintiffs' property and that the boundary line should be established and fixed between the lands of plaintiffs and defendant at the point fixed by Mr. J. H. Shepard, the present County Surveyor of Jefferson County, Arkansas, and also at the marker previously established by using the beginning point on marker established by Mr. Clayton Gould, former County Surveyor of Jefferson County, Arkansas."

*There was no prayer for general relief.*

Appellee filed an answer questioning the jurisdiction of the court, contending that the action was one in ejectment. The answer also contained a general denial and pleaded adverse possession, laches and estoppel. His prayer was:

"* * * [T]hat plaintiffs' Complaint be dismissed for want of equity and for any and all other proper relief, including the dissolution of the Restraining Order issued herein."

Thus, the court granted the exact relief sought by appellee. In doing so, I submit that it was supported by a preponderance of the evidence. Appellee did not cross appeal.

Appellants filed a motion for new trial and an amendment to a motion for new trial. In neither did

they ask the court to fix the true boundary. As a matter of fact, no party has at any time asked the court to determine the true boundary.

Just two months ago we denied an appellant relief from the trial court's dismissal of his action to quiet title. That court's dismissal was for want of equity because appellant there failed to meet the burden of proof. See *Corn* v. *Arkansas Warehouse Corporation,* 243 Ark. 130, 419 S. W. 2d 316. The identical argument was there advanced; *i. e.,* that the decree did not decide the issues between the parties. A further point of similarity is appellant's contention that it was incumbent upon the appellee-defendant to plead and prove whatever grounds for relief he might have. We said that the failure of the defendant to do this did not entitle plaintiff to relief in spite of his failure to meet his burden of proof. There, as here, the appellee only defended against the appellant's complaint but did not assert a counterclaim, did not seek any relief against the appellant, and did not appeal. If appellee here is satisfied with the disposition of the case below, I cannot see why we should not be.

In a case where there was a title dispute as between the heirs of a wife and the husband, the trial court accepted the view of the husband that he and his wife owned certain property as tenants in common and awarded one-half to each side. On appeal by the heirs, this court noted that the property was held in a tenancy by the entirety and that appellants had no claim of title. However, the decree was affirmed "as appellee does not appeal, the presumption is that he does not wish to modify or set aside the decree." *Johnson* v. *Austin,* 86 Ark. 446, 111 S. W. 455.

I agree that where there is no prayer for relief, a court should grant relief to a plaintiff where the *only* relief to which he can be entitled is at once apparent

from the allegations of the complaint. *Sannoner* v. *Jacobson & Co.*, 47 Ark. 31, 14 S. W. 458. But where there is a specific prayer for relief and a general prayer for relief, and the evidence does not sustain the complaint or the court should refuse relief on principles of equity, the trial court *may* give to the complainant any relief warranted by the facts *under his general prayer for relief.* *Cook* v. *Bronaugh,* 13 Ark. 183; *Kelly's Heirs* v. *McGuire,* 15 Ark. 555; *Ross* v. *Davis,* 17 Ark. 113; *Shields* v. *Trammell,* 19 Ark. 51; *Rogers* v. *Brooks,* 30 Ark. 612; *Morgan* v. *Scott-Mayer Comm. Co.,* 185 Ark. 637, 48 S. W. 2d 838; *Grytbak* v. *Grytbak* (on rehearing) 216 Ark. 674, 227 S. W. 2d 633.

The granting of such relief is permissive, not mandatory, unless the relief should follow as a natural consequence of the specific relief sought and granted or it is such as to constitute the only relief which could be granted on the facts stated. But appellants are not entitled to any relief other than the specific relief because they made no prayer for general relief. Even if they were, I do not believe that this court should remand a case to the trial court for the granting of relief when the appellants have never, in any way whatsoever, made their desire for that relief known to the trial court.

The primary object of requiring parties to present all questions and issues to the trial court is to have the lower court pass thereon so that the appellate court may determine whether the action is erroneous. *Jones* v. *Seymour,* 95 Ark. 593, 130 S. W. 560; *Schuman* v. *Mosley,* 220 Ark. 426, 248 S. W. 2d 103. In these cases it was held that a question not presented to the lower court could not be raised as an issue on appeal.

In *Western Union Telegraph Co.* v. *Freeman,* 121 Ark. 124, 180 S. W. 743, this court said that it was its uniform holding that the trial court should not be reversed for errors to which its attention was not called. It was further said that it would be manifestly unfair

to reverse a trial court for error in a ruling it did not make or have an opportunity to make.

In an action to recover land, a plaintiff did not ask for an accounting of rents in his complaint and did not appear to have insisted on it in the trial court. This court, on appeal, affirmed the decree which had ignored the accounting because it was too late to ask that relief here. *Green* v. *Clyde*, 80 Ark. 391, 97 S. W. 437.

In *Bank of Weiner* v. *Jonesboro Trust Co.*, 168 Ark. 859, 271 S. W. 952, the trust company foreclosed a real estate mortgage executed by one Ruegger. The Bank of Weiner was mortgagee in a crop mortgage which was found not to create a lien as to third parties. The bank, a defendant, contended that the foreclosure decree in favor of the trust company was erroneous in ordering a sale of the ungathered crops with the land since the crop mortgage was valid as between the parties to it. They contended that the trust company was only entitled to a judgment against Ruegger for the rents and profits. This court said:

> "It is finally insisted that the court below erred in decreeing a sale of the crop and should have given appellee a decree for the rental value of the land only. In reply to this contention, it may be said that no such issue was raised by the pleadings in the court below; and it may be further said that Ruegger has not appealed, and, as the bank has no lien on the crop, it is in no position to raise the question."

In *Angelletti* v. *Angelletti*, 209 Ark. 991, 193 S. W. 2d 330, this court denied to an appellant just such relief as is asked here. The defendant wife filed an answer and cross complaint with a prayer that the husband's complaint be dismissed, that she be granted a divorce, awarded alimony, 25 feet of a certain lot in Greenwood, court costs and attorney fees and "all other proper re-

lief.'' She contended on appeal that she was also entitled to an interest in a certain lot in Fort Smith, which the evidence disclosed that the husband owned. This court said:

> ''The answer to the appellant's contention is found in the facts: (a) That she did not in her pleadings ask for any such interest to be ascertained and allowed; and (b) at the conclusion of the evidence, when the decree was rendered, she did not make any such claim to the trial court on which to predicate an assignment of error in this court. In short, she is raising this issue in this court, for the first time.
> * * *
> It is thus clear that the appellant never asked the chancery court to award her any interest in the Fort Smith property of the appellee. The appellant did not even mention to the chancery court that she was expecting an interest in the property, and this claimed interest is asserted in this court for the first time. Issues not presented in the trial court cannot be raised for the first time on appeal.
> * * *
> In *Gulley* v. *Budd*, Ark., 189 S. W. 2d 385, 390, decided July 9, 1945, we quoted from *Missouri Pac. R. Co.* v. *J. W. Myers Comm. Co.*, 196 Ark. 976, 120 S. W. 2d 693, as follows: 'This court has frequently held that no issue can be raised in this court which was not raised in the trial court; and since appellant's present contention was not raised in the trial court, as we have herein pointed out, we believe the relief it is now asking on appeal should be denied. *Bolen* v. *Farmers' Bonded Warehouse,* 172 Ark. 975, 291 S. W. 62; *Leonard* v. *Luther,* 185 Ark. 572, 48 S. W. 2d 242; *Banks* v. *Corning Bank & Trust Co.,* 188 Ark. 841, 68 S. W. 2d 452; *Id.,* 292 U. S. 653, 54 S. Ct. 863, 78 L. Ed. 1502; *Illinois Bankers' Life Assurance Co.* v. *Lane,* 189 Ark. 261, 71 S. W. 2d 189.' ''

The opinion in *Mason* v. *Gates,* 90 Ark. 241, 119 S. W. 70, is also compelling authority. There, the appellees brought suit to quiet title to certain lots. Appellants, who were defendants, filed an answer and cross complaint asking that certain descriptions be corrected and "that plaintiffs' suit be dismissed for want of equity and for such other and further relief as may be necessary." Appellants, who were intervenors, asked that they be permitted to intervene in the suit, set up their rights and claim to some of the lots, and "make answer to the claim of the plaintiffs in this cause to the end that their rights may be protected and adjudicated." Appellants contended that title to one lot should have been vested and quieted in one of defendants and title to two of the lots quieted in intervenors, all title and claims divested out of appellees, and appellees enjoined from interfering with appellants in the use and occupancy of this property. The trial court had entered a decree dismissing the complaint of appellees. This court said there was no prayer in the pleadings by appellants for the *specific relief* set out in their contention on appeal. Recognizing that the statements of facts and not the prayer for relief constituted the cause of action and that a court *may* grant any relief that the facts thus pleaded and proved would warrant, this court affirmed the lower court. The opinion quoted from *Rogers* v. *Brooks,* 30 Ark. 612, 618, as follows:

"* * * 'But, although it may from the proofs be apparent that the complainant is entitled to other relief, yet, unless the bill is so framed as to put such facts at issue, the court will not decree such further relief, for it would be decreeing upon an issue not before the court, and to which the proofs could not properly apply, and would tend to surprise the defendant.' "

*Mandel* v. *Peet, Simms & Company,* 18 Ark. 236, cited by the majority, is no precedent here. It is a law case. The appellant was the defendant below and he had

clearly raised the issue of which the trial court did not dispose before rendering a judgment for the appellee-plaintiff. This error seems obvious. The lack of similarity to this case seems just as obvious to me. The identical distinctions are applicable to *Hollis* v. *Moore*, 25 Ark. 105. I submit that there is no precedent for the action taken by the majority in this case. I further submit that there is no logic in a court's determining whether the statute of limitations has run, or whether a plaintiff is guilty of laches, or whether he is barred from relief by estoppel, when his failure to meet his burden of proof makes the determination unnecessary.

I maintain that we should remain truly an appellate court. As such, we should only be concerned with errors of the trial court and should consistently require that questions be properly raised in a trial court and that that court be given a proper opportunity to act before we give any consideration to them.

I would affirm the decree of the chancery court.