THE STATE EX INF. STRATTON SHARTEL, Attorney-General, Petitioner, v. LARRY BRUNK, State Treasurer.—34 S. W. (2d) 94.

Court en Banc, December 31, 1930.

1182

*Stratton Shartel,* Attorney-General, *Edward G. Robison* and *G. C. Weatherby,* Assistant Attorneys-General, for petitioner; *Farrington & Curtis* of counsel.

*John G. Madden* and *Madden, Freeman & Madden* for respondent.

FRANK, J.—Respondent is State Treasurer of the State of Missouri. This is an original proceeding in *quo warranto* whereby the State of Missouri, through its Attorney-General, seeks the forfeiture of respondent's office and his removal therefrom.

The proceeding is bottomed on Sections 13290, 13336 and 13337, Revised Statutes 1919, the provisions of which are respectively as follows:

Sec. 13290. "In case of death, resignation, removal from office, impeachment or vacancy from any cause, in the office of either the auditor or treasurer, the governor shall take charge of such office and superintend the business thereof until a successor is appointed, commissioned and qualified, except in case of impeachment, when no appointment shall be made until a determination of the matter is had, when, in the event of an acquittal, the suspended officer shall be reinstated in office."

Sec. 13336. "It shall be the duty of the state treasurer to report to the governor in writing, under oath, on or before the fifth day of every month: First, the amount of money received by him during the previous month; second, the amount paid out during the same period; third, the balances on hand to the credit of the several funds; and fourth, the amount of actual money in his vault on the evening of the last day of the previous month, and on deposit, and in what bank or banks, and the sum in each. The auditor shall in like manner report on the same day: First: the total of all money received by the state from every source; second, the amount of warrants, drawn on the different funds; and third, the balance in the treasury, as shown by his books, on the evening of the last day of the previous month. It shall be the duty of every depository of public money to transmit to the governor, on or before the fifth day of every month, a true statement of account, showing the several deposits made by the treasurer and the dates thereof during the previous month, the balance on hand at the end of such month, including the interest, if any, which may have accrued on the deposits. The governor, without delay, shall compare the several reports and statements and ascertain whether the treasurer has deposited the money which came into his hands, and at the proper date; and whether he has drawn out only such sums as are the equivalent of the warrants issued by the auditor."

Sec. 13337. "Should either the treasurer or the auditor willfully fail to make the report required in the preceding section, or should it appear that any such report is false, or that the treasurer has failed to deposit the state's money as required by law, or drawn out of any depository of the state funds, except as provided by law, then in any such case the officer thus offending shall be immediately suspended by the governor and his office taken charge of as provided by law, and upon proof of any such offense, such officer shall forfeit his office, and the attorney-general shall taken immediate steps, under the direction of the governor, to have said officer removed by a *quo warranto* proceeding in the Supreme Court."

For present purposes it is sufficient to state that the information, in substance, alleges that respondent as State Treasurer violated the provisions of above quoted statutes, by reason of which the governor,

on October 14, 1930, suspended him from said office and directed the institution of this proceeding for the purpose of removing him therefrom. The prayer of the information is that respondent be required to show cause why his said office should not be forfeited and judgment of ouster should not go against him.

Respondent challenges the jurisdiction of this court on the ground that the above quoted statutes which purport to authorize this proceeding are unconstitutional and void.

The ground of respondent's contention is that where, as here, the Constitution creates an office, fixes the term and tenure of its incumbent, prescribes the method by which and the causes for which such officer may be removed, the methods and grounds fixed by the Constitution are exclusive, and the Legislature has no power or authority to provide for the removal of such officer for any other cause or in any other manner.

The office of State Treasurer is created by Section 1 of Article V of the Constitution. Section 2 of the same article fixes the term and tenure of such officer at a period of four years and until his successor is elected and qualified. Section 1 of Article VII of the Constitution provides that the State Treasurer "shall be liable to impeachment for high crimes or misdemeanors, and for misconduct, habits of drunkenness or oppression in office." Section 2 of the same article provides that the House of Representatives shall have the sole power of impeachment and that all impeachments shall be tried by the Senate. It thus appears that the State Treasurer is a constitutional officer whose term and tenure of office is fixed by the Constitution. It likewise appears that he is liable to impeachment for the causes mentioned in the Constitution, and that the sole power of impeachment is, by constitutional mandate, lodged in the House of Representatives. In this situation, the question confronting us is whether or not the Legislature has authority, as was attempted in this case, to authorize the Governor to suspend a constitutional officer and empower this court to oust him in a *quo warranto* proceeding, where, as here, the Constitution creates the office, fixes the term and tenure of such officer, and provides the causes for which and the manner in which he may be removed, or whether the methods and grounds fixed by the Constitution are exclusive. While this direct question has never been decided by the courts of this State, we are not without authority on the subject. Courts in other jurisdictions and textwriters who have dealt with the question are practically unanimous in holding that where the Constitution prescribes the causes for which and the methods by which an officer may be removed, such causes and methods are exclusive. In Cooley's Constitutional Limitations (8 Ed.), vol. 1, page 139, the general rule of construction to be applied

in construing constitutional provisions such as we have here, is thus stated:

"Another rule of construction is, that when the constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition, or to extend the penalty to other cases."

22 Ruling Case Law, Section 265, page 561, states the law as follows:

"The constitution of a state may, however, place beyond the reach of hostile legislation the methods and grounds for removing incumbents of public offices; and where the constitution prescribes the method of removal and the causes for which public officers may be removed, the method and grounds established by this instrument are exclusive and it is beyond the power of the legislature to remove them for any other cause or in any other manner."

In 46 Corpus Juris 1002, it is said:

"Where the constitution provides a method of impeachment of officers, that method is exclusive and the power which the legislature might otherwise be regarded as possessing is taken away."

Other authorities to the same effect are: 23 Am. & Eng. Ency. Law (2 Ed.) 431; 29 Cyc. 1414; Throop on Public Officers, sec. 341, p. 343; Mechem on Public Offices & Officers, sec. 467, p. 297.

Practically all the courts of the country which have had occasion to deal with this question have decided it in line with the authorities above quoted. The exact question which we have here was before the Court of Appeals of Kentucky in Lowe v. Commonwealth, 3 Metc. 237, 60 Ky. 237. The opinion in that case is so thoroughly in accord with our views on the subject that we quote therefrom the following:

"But the question yet remains to be decided, whether the Legislature can prescribe any other mode of removing such officers from office than those furnished by the Constitution, or enact a law whereby such officers may be suspended from a performance of the duties of their respective offices, and deprived of the emoluments of the same, which suspension—so far as the officer is concerned—would be certainly tantamount to a removal.

"It seems to us that there can be but one view of this question, which is, that wherever the Constitution has created an office and fixed its term, and has also declared upon what grounds and in what mode an incumbent of such office may be removed before the expiration of his term, it is beyond the power of the Legislature to remove such officer or suspend him from office for any other reason or in any other mode than the Constitution itself has furnished.

"To recognize the existence of such power would be, in effect, to say that these provisions of the organic law of the land are subject to legislative caprice, and, to that extent, to defeat and violate the restrictions and safeguards which were inserted in the Constitution in order to give it permanence and stability. The results of such a doctrine might be pernicious in the extreme.

"The Governor's term of office is fixed by the Constitution. That instrument likewise provides how he may be impeached and removed, and declares that all impeachments shall be tried by the Senate. Would it be seriously contended that the Legislature could, by enactment, subject him to trial for official misconduct, in any other mode—as by indictment or presentment in a circuit court—and declare that, upon a conviction thus had, his office should be deemed vacant, or that he should be suspended from a discharge of his official duties? And yet such legislation would be valid if that department of the government can, at its option, change the provisions of the Constitution in reference to the mode of proceeding against the Governor or any officer whose office is created by that instrument.

"Or suppose the Legislature should attempt, by enactment, to empower this court, whenever in its judgment the public interest demanded it, to suspend any state officer, whose term of office is fixed by the Constitution, and who is subject to impeachment, from the performance of his official duties for such period as the court might deem proper, would such enactment be regarded as constitutional? Most certainly not. And yet the reverse would be true if the power in question really existed.

"In our opinion the fact that the framers of the Constitution inserted in that instrument the several provisions fixing the terms of the offices thereby created, and prescribing the grounds upon which and the modes whereby the incumbents of such offices may be removed, is altogether sufficient to warrant the conclusion that those subjects were fully considered by them, and that they intended, by embodying said provisions in the Constitution, to make them permanent and fixed, and thus to place the subjects to which they relate altogether beyond legislative control."

Other cases to the same effect are: People ex rel. v. Howland, 155 N. Y. 270; Speer v. Wood, 128 Ark. 183; State ex rel. La Follette et al. v. Kohler, 228 N. W. 895; Dinan v. Swig, 223 Mass. 516, 112 N. E. 91; Attorney-General v. Tufts, 239 Mass. 458, 131 N. E. 573, 17 A. L. R. 274; State ex rel. v. Pritchard, 36 N. J. L. 101; Commonwealth v. Gamble, 62 Pa. St. 343; State ex rel. v. Friedley, 21 L. R. A. 634, 135 Ind. 119. Many other cases of like import could be cited, but those to which we have called attention sufficiently indicate the trend of thought on the subject.

The weight of authority leads to the conclusion that the provisions of Article VII of our Constitution which enumerates the causes for which the State Treasurer may be impeached and clothes the Legislature with *sole* power to remove him by impeachment proceedings, is an implied prohibition against legislation providing for his removal for any other causes or in any other manner. If this were the only point in the case we would be compelled to hold that Section 13337, Revised Statutes 1919, which purports to invest this court with jurisdiction to remove the State Treasurer is unconstitutional and void, but our Constitution furnishes additional reasons for so holding. Section 7 of constitutional amendment No. 18 provides as follows:

"Laws may be enacted to provide for the removal from office, for cause, of all public officers not otherwise provided for in this Constitution."

This amendment expresses a clear intent on the part of the constitution-makers to prohibit the Legislature from providing for the removal of public officers whose removal is provided for in the Constitution. As other provisions of the Constitution make express provision for the removal of certain officers, including the State Treasurer, the express power given the Legislature by this amendment to remove all other public officers, should be construed as limiting the powers of the Legislature to those expressly granted to it by the amendment. [State ex rel. York v. Locker, 266 Mo. 384, 181 S. W. 1001, 1004.]

Another reason for holding that the Legislature has no power to provide for the removal of public officers whose removal is provided for in the Constitution, is the inherent conflict that would necessarily arise. Cooley's Constitutional Limitations, supra, p. 176, states the law thus:

"The inhibition of a Constitution may be either express or implied; that is, the Constitution may expressly prohibit any specified act of the Legislature, or the Constitution by its inherent terms may of necessity prohibit certain acts of a Legislature by reason of the inherent conflict that would arise between the terms of the Constitution and the power claimed in favor of the Legislature."

Suppose we should assume jurisdiction of this case, try it on the merits, find the issues in favor of respondent and render judgment quashing the writ, would such a judgment prevent the Legislature from removing respondent from his office by impeachment proceedings? Most certainly not. The Constitution clothes the Legislature with sole power of removal by impeachment proceedings, and it cannot strip itself of that constitutional authority or lodge it elsewhere. In this connection, it is well to note that a judgment of a court of last resort, in a case in which it has jurisdiction, is final and con-

clusive. The fact that any judgment we might render in this case would not be final and conclusive, but would leave respondent subject to be removed from his office by the Legislature, clearly demonstrates that we have no jurisdiction to finally adjudicate the question of his removal, and the statute which attempts to invest us with such jurisdiction is violative of the constitutional provisions which lodge such jurisdiction elsewhere.

Petitioner cites the case of State v. George B. Wilson, 265 Mo. 1, 175 S. W. 603, in support of the contention that Section 13337, Revised Statutes 1919, which purports to authorize the removal of respondent in this proceeding, is a valid enactment. In that case, it was held by a divided court, four judges concurring and three dissenting, that Section 34 of Article VI of the Constitution which expressly enumerates the subjects over which probate courts should have jurisdiction, did not prevent the Legislature from extending the jurisdiction of such courts to subjects not named in the Constitution, in the absence of any constitutional provision preventing the Legislature from so doing. It is contended that this case furnishes authority for holding that Sections 1 and 2 of Article VII of the Constitution which expressly authorize the Legislature to remove the State Treasurer by impeachment proceedings, do not prevent the Legislature from providing for his removal in some other mode, because there is no constitutional inhibition against it. Petitioner's argument, based on the case cited, loses force in face of the fact the exact contrary was held in the later case of State ex rel. York v. Locker, 266 Mo. 384, 181 S. W. 1001. In the latter case the Court en Banc in a unanimous opinion held that Section 34 of Article VI of the Constitution which names the subjects over which probate courts shall have jurisdiction, is a prohibition against the Legislature extending the jurisdiction of such courts over subjects not specified in the Constitution.

Petitioner calls attention to various constitutional provisions which fix certain duties to be performed by the State Treasurer and provide that he shall perform such duties as may be prescribed by law. Attention is also called to the constitutional provision providing that the Legislature shall pass all such laws as may be necessary to carry the Constitution into full effect. It is contended that these constitutional provisions evince an intention not to confine authority to remove the State Treasurer to the Legislature by impeachment proceedings, but on the contrary to authorize the Legislature to enact all reasonable laws, which, in its judgment, might be necessary to protect the treasury, including laws providing for the removal of the Treasurer. There is no hint or suggestion in any of these constitutional provisions as to when, for what causes or by whom the State Treasurer may be removed, and no authority is given the Legis-

lature to provide for such removal. It might be argued that no purpose would be served in authorizing the Legislature to prescribe duties to be performed by the State Treasurer unless it also had authority to prescribe penalties for the violation of such duties. A sufficient answer to such an argument is that the Legislature has full power to prescribe any penalty it may deem adequate for violation of official duty, in the absence of constitutional prohibition, express or implied. In addition, any violation of official duties by the State Treasurer, whether such duties be constitutional or statutory, would be misconduct in office and misconduct in office renders him liable to impeachment.

Contention is made that impeachment is a criminal proceeding, whereas *quo warranto* is a civil proceeding. From this premise, it is argued that the constitutional provision which grants to the Legislature sole power of removal by criminal proceedings does not prohibit the Legislature from providing for such removal by *quo warranto* which is a civil proceeding.

The purpose of either proceeding is removal from office. If the Legislature has the sole power of removal, to permit some other tribunal to exercise that power, no matter by what form or procedure, would defeat the purpose of the Constitution.

The final contention is that the suspension provisions of the statute are separable from the removal provisions, and as there is no constitutional inhibition against the suspension provision, it should be held valid, although the removal provision be held void.

This court has held that the power to remove necessarily includes the minor power to suspend, and that an officer may be suspended pending the trial of charges preferred against him. [State ex rel. McCormack v. McPheeters et al., 178 S. W. 482.] The reason for this holding was well expressed in State v. Police Commissioners, 16 Mo. App. 50, as follows:

"The suspension of an officer, pending his trial for misconduct, so as to tie his hands for the time being, seems to be universally accepted as a fair, salutary, and often necessary incident of the situation. His retention, at such a time, of all the advantages and opportunities afforded by official position may enable and encourage him, not only to persist in the rebellious practices complained of, but also to seriously embarrass his triers in their approaches to the end of justice."

The suspension and removal provisions of the statute read as follows:

". . . then in any such case the officer thus offending shall be immediately suspended by the governor and his office taken charge of as provided by law, and upon proof of any such offense, such of-

ficer shall forfeit his office, and the attorney-general shall take immediate steps, under the direction of the governor, to have said officer removed by a *quo warranto* proceeding in the supreme court.''

No one would contend that the Legislature intended that the suspension should be for an indefinite period of time. If such were the intention, the statute would be void for that reason, if for no other. Necessarily it was intended that the suspension should be for some period of time, and that intention must be gathered from the language of the act. It provides that the Governor shall immediately suspend the offending officer, take charge of his office and direct the institution of *quo warranto* proceedings in this court looking to his removal. A reasonable interpretation of the act clearly shows that the lawmakers intended that suspension should continue until the trial and determination of the removal proceedings in this court. This conclusion so inseparably connects the suspension provisions with the removal provisions that one cannot stand without the other. The suspension provisions, standing alone, would authorize an indefinite suspension, which, in effect, would be a removal and for that reason would be void.

Respondent advances other reasons why the suspension provision of the statute is void, but as what we have already said determines the question, we will not discuss them.

For the reasons heretofore stated this court has no jurisdiction of this proceeding. The cause is therefore dismissed.

All concur, except *Ragland, C. J.*, absent.