BEATRICE EISENBERG, CLERK OF THE BOROUGH OF WOOD-BINE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF, v. THE COMMITTEE TO RECALL LEVIN (ROBERT T. BENNER, CHAIRMAN) AND THOMAS LEVIN, MAYOR OF THE BOROUGH OF WOODBINE, DEFENDANTS.

Superior Court of New Jersey
Law Division Cape May County

Decided May 9, 1980.

*James A. Waldron,* for plaintiff (*Rubins & Waldron,* attorneys).

*H. Robert Switzer,* for defendant Committee (*Henry G. Broome, Jr.,* attorney).

*Charles H. James,* for defendant Thomas Levin.

STALLER, J. S. C.

Beatrice Eisenberg, plaintiff in this action for declaratory judgment, is the Clerk of the Borough of Woodbine. She brings this action to determine whether she must conduct a recall election as demanded by codefendant Committee to Recall Levin (hereinafter Committee). Thomas Levin is the mayor of Woodbine, the subject of the petition for a recall election and a codefendant in this action.

The Borough of Woodbine was incorporated by an act of the Legislature in 1903 pursuant to the Borough Act, *N.J.S.A.* 40:86–1 *et seq.*, which remains in force today, providing essentially the same form of borough government as it did when enacted in 1897. The current question arises because the Borough Act contains no provision for the recall of elective officials while that right is available under other forms of municipal government. Despite some 83 years since the enactment of the Borough Act, and its continued use in 222 municipalities, *Forms of Municipal Government in New Jersey: A Report of the County & Municipal Study Commission*, 35 (Jan. 1979), there are no reported cases deciding this issue.

The first argument presented by the Committee is that N.J.Const. (1947), Art. I, par. 2, guarantees the right of recall to all citizens of the State of New Jersey. This provision reads as follows:

> All political power is inherent in the people. Government is instituted for the protection, security, and benefit of the people, and they have the right at all times to alter or reform the same, whenever the public good may require it.

While it may be argued that the removal of an elective official is a minimal form of alteration or reformation of government, and is thus guaranteed by Art. I, par. 2, our Supreme Court has expressly held that there is no constitutional right to recall office holders. *Roman v. Sharper,* 53 *N.J.* 338 (1969); *Leers v. Diehl* 11 *N.J.Misc.* 525, 167 *A.* 216 (Sup.Ct.1933). *See, also, In re Petition of Smith,* 114 *N.J.Super.* 421, 435 (App.Div.1971). These decisions are binding upon this court and the Committee's argument in this regard must fail.

The Committee next argues that the Borough Act is unconstitutional in that by failing to provide for the recall of elected borough officials the statute denies the borough citizens equal protection of the law, in violation of the Fourteenth Amendment of the United States Constitution. As indicated above, this argument is based on the fact that the right to recall has not been provided for borough citizens while it has been provided for in municipalities operating under other forms of municipal government. *N.J.S.A.* 40:70–1 *et seq.* (1911, the Walsh Act);

*N.J.S.A.* 40:79–1 *et seq.* (1923, the Municipal Manager Form of Government Law); *N.J.S.A.* 40:69A–1 *et seq.* (1950, the Faulkner Act). Related to this equal protection argument is the Committee's final contention, that the recall provisions of the Faulkner Act, *N.J.S.A.* 40:69A–168 *et seq.*, should be applied in this instance and a recall election held. Apparently, the Committee contends that the recall provisions of the Faulkner Act impliedly amended the Borough Act, as well as other still viable 19th Century statutes which created various forms of municipal government but which provided no express right to recall. (City form of government, *N.J.S.A.* 40:103–1 *et seq.* (1889); town form of government, *N.J.S.A.* 40:123–1 *et seq.* (1895); township form of government, *N.J.S.A.* 40:142–1 *et seq.* (1899); village form of government, *N.J.S.A.* 40:157–1 *et seq.* (1891)). Indeed, the petition for recall which was presented to Mrs. Eisenberg was apparently in conformity with the recall provisions of the Faulkner Act, *N.J.S.A.* 40:69A–168 *et seq.*, *i. e.*, the recall petition contained the signatures of 25% of the registered voters of Woodbine, and alleged, correctly, that Thomas Levin has been the mayor for a period in excess of one year.

For the reasons which will be discussed below, it is the holding of this court that the lack of a recall provision in the Borough Act does not result in a denial of equal protection of the law. Further, this court finds that the recall provisions of the Faulkner Act, *N.J.S.A.* 40:69A–168 *et seq.*, may be utilized only by citizens of municipalities that have adopted one of the optional municipal charters provided by that act. These holdings will be discussed in reverse order.

■ At first glance, the broad wording of the principal recall provision of the Faulkner Act, *N.J.S.A.* 40:69A–168, may lead one to believe that the Legislature intended that the right to recall should exist in every municipality within the State:

> Any elective officer shall be subject to removal from office for cause connected with his office, after he has served at least one year, upon the filing of a recall petition and the affirmative vote of a majority of those voting on the question of removal at any general, regular municipal or special election.

However, this provision (following provisions for 16 optional plans of government) is contained in Article 17 of the Faulkner

Act, entitled "Additional Provisions Common to *Optional Plans*" (emphasis supplied). Thus, the plain language of the statute leads to the inevitable conclusion that the recall provisions of the Faulkner Act were meant to be available only to citizens of those municipalities which adopt one of the forms of municipal government provided for in that Act.

The Legislature is presumed to be thoroughly familiar with the contents of its prior enactments, *Quaremba v. Allan*, 67 *N.J.* 1 (1975), and is thus presumed to have been aware that the Borough Act, as well as some other municipal government statutes, contained no provision for recall of elective officials.[1] Further, there is a presumption against the implied amendment of existing statutes. *General Electric Corp. v. E. Fred Sulzer & Co.*, 86 *N.J.Super.* 520 (Law Div.1965), aff'd 92 *N.J.Super.* 210 (1966). The Legislature could have readily made this legislative grant directly available to citizens of all municipalities, and its failure to do so was the result of the exercise of legislative discretion which is not subject to review by this court. *Geduldig v. Aiello*, 417 *U.S.* 484, 94 *S.Ct.* 2485, 41 *L.Ed.2d* 256 (1974).

The only reported decision which bears on the question of whether a legislative grant made in the Faulkner Act may be applied to a municipality which has not adopted one of the optional charters provided therein supports the result reached here. *Paolella v. Hackensack*, 76 *N.J.Super.* 86 (Law Div.1962). There the court considered whether the powers of initiative and referendum provided by the Faulkner Act were also available to the citizens of the City of Hackensack, which operated under the Municipal Manager Form of Government. The court held,

We therefore find and conclude the special powers of initiative and referendum for submission and adoption of a municipal ordinance by the voters at a general election, *as provided only by the Faulkner Act*, is a power limited to municipalities under the Faulkner Act, and the power was neither granted to nor adopted by the defendant municipality [at 89; emphasis supplied].

---

[1] *N.J.S.A.* 40:45B–1 (the Municipal Governing Body Vacancy Law) was made applicable to boroughs by the 1975 amendment of *N.J.S.A.* 40:87–11, providing further indication that the Legislature is fully aware of the existence and contents of the Borough Act. This reinforces the conclusion that the Borough Act was not impliedly amended by the Faulkner Act.

■ With regard to the Committee's claim that the citizens of Woodbine are denied equal protection of the law by virtue of the statutory scheme of municipal government in New Jersey, it should be noted at the outset that the powers of initiative, referendum and recall are available to them. They may attain these powers at any time by adopting one of the optional plans of government provided by the Faulkner Act, or if otherwise appropriate, by the adoption of the commission form of government, *N.J.S.A.* 40:70–1 *et seq.* The municipal manager form of government, *N.J.S.A.* 40:79–1 *et seq.*, also has a recall provision, *N.J.S.A.* 40:81–6, but does not appear to provide for initiative and referendum. The fact that the power to recall elected officials is ultimately available to the citizens of all municipalities in the State militates against a finding that the absence of that power under particular forms of municipal governments is a denial of equal protection of the law. The basic requirement of the equal protection clause of the Fourteenth Amendment is that all persons within a class reasonably selected are treated alike, *Louisiana ex rel. Francis v. Resweber*, 329 *U.S.* 459, 67 *S.Ct.* 374, 91 *L.Ed.* 422 (1947); *Wilson v. Long Branch*, 27 *N.J.* 360 (1958), *cert.* den. 358 *U.S.* 873, 79 *S.Ct.* 113, 3 *L.Ed.*2d 104 (1959), and that requirement is met by New Jersey's statutory scheme of municipal government.

■ As noted previously, the right to recall elective officials is not a constitutional right, and the Legislature may impose rational restraints upon its exercise. *In re Petition of Smith, supra.* Further, equal protection of the law does not require that state laws cover the entire field of proper legislation in a single enactment. *Middleton v. Texas Power & Light Co.*, 249 *U.S.* 152, 39 *S.Ct.* 227, 63 *L.Ed.* 527 (1919); *Cleland v. Nat'l College of Business*, 435 *U.S.* 213, 98 *S.Ct.* 1024, 55 *L.Ed.*2d 225 (1978); *Buckley v. Valeo*, 424 *U.S.* 1, 96 *S.Ct.* 612, 46 *L.Ed.*2d 659 (1976); *San Antonio Indep. School Dist. v. Rodriguez*, 411 *U.S.* 1, 93 *S.Ct.* 1278, 36 *L.Ed.*2d 16 (1973). Thus, the Legislature may at any time grant the right of recall to boroughs, but its failure to do so does not effect the constitutionality of the Borough Act or those statutes in which the right was granted.

The Committee attempts to analogize the present situation to that faced by the United States Supreme Court in cases involving the effect of the apportionment of legislative districts on the quality of the vote cast by individual electors. *Baker v. Carr,* 369 *U.S.* 186, 82 *S.Ct.* 691, 7 *L.Ed.*2d 663 (1961); *Reynold v. Sims,* 377 *U.S.* 533, 84 *S.Ct.* 1362, 12 *L.Ed.*2d 506 (1963). These decisions have come to be known as the "one-man, one-vote" decisions, and they hold, generally, that any gerrymandering of legislative districts which affects the quality of the votes cast by individual electors denies such individuals equal protection of the laws. Voting was recognized as a fundamental right preservative of all other rights, and the dilution of the effectiveness of a citizen's vote impermissibly places him in a position inferior to his fellow citizens.

The Committee also places reliance upon *Kramer v. Union Free School Dist.,* 395 *U.S.* 621, 89 *S.Ct.* 1886, 23 *L.Ed.*2d 583 (1969), another voting rights case. In that case the plaintiff, who was otherwise qualified, was denied the right to vote in a local school board election because he neither owned nor leased, nor was the spouse of one who owned or leased, taxable property within the district, nor was he the parent or guardian of a child enrolled in one of the district's schools. The court noted that where a statute "grants the right to vote to some bona fide residents of requisite age and citizenship and denies the franchise to others, the court must determine whether the exclusions are necessary to promote a compelling state interest." *Id.* at 627, 89 *S.Ct.* at 1890. The court held that the statute in question did not further a compelling state interest in that it was not sufficiently tailored to those "primarily interested" in school affairs to justify denial of the franchise to the plaintiff.

While these Supreme Court decisions and their progeny continue to safeguard the cornerstone of our democracy, I find that they have no bearing on the issue at hand. There is no question that within the relevant population group, the citizens of the Borough of Woodbine, the vote of each citizen has equal weight in determining the outcome of any municipal election. Nor is there any question of the placement of impermissible conditions on the right to vote within the relevant voting district. Those

are the interests protected by the decisions cited by the Committee, and said decisions are not persuasive authority for the proposition which it advances—that the citizens of every municipality should have the right to recall their elective officials because that right exists in some municipalities. As such, the Committee has not sustained its heavy burden of proving that the Borough Act is violative of the equal protection clause of the Fourteenth Amendment. *N.J. Chap., Am. I. P. v. N. J. State Bd. of Prof. Planners*, 48 *N.J.* 581 (1967), app. dism., *cert.* den. 389 *U.S.* 8, 88 *S.Ct.* 70, 19 *L.Ed.2d* 8 (1967).

In summary, this court finds that in light of decisions of the New Jersey Supreme Court holding that the right to recall is not guaranteed by the New Jersey Constitution the question of granting or refraining from granting the right of recall under the various forms of municipal government is purely a legislative one. The failure to provide a recall provision in the Borough Act does not constitute a denial of equal protection of the law since the Legislature has made the power of recall available to citizens of all municipalities, subject to conditions which it may properly impose. *In re Petition of Smith, supra.* The citizens of Woodbine have not taken the steps necessary to make this remedy available to them and it may not be employed unless they do.