The Honorable Ed Wilkinson State Senator P.O. Box 610 Greenwood, Arkansas 72936-0610
Dear Senator Wilkinson:
I am writing in response to your request, on behalf of yourself and Representative Sarah Agee, for an opinion on whether Senate Bill 378 is constitutional. The bill sets out a procedure for the "recall" of certain elected officials. You ask that I state my opinion as to the constitutionality of the bill as now engrossed and that I separately opine on the bill, taking into account two contemplated but as yet unadopted amendments that you have enclosed for my review.
RESPONSE
It is my opinion that the bill is unconstitutional either with or without the contemplated amendments. A recall procedure for the officials listed in Senate Bill 378 may only be instituted by constitutional amendment, not by act of the General Assembly.
Senate Bill 378 is entitled "AN ACT TO ESTABLISH A PROCEDURE FOR THE RECALL OF STATE CONSTITUTIONAL OFFICERS, MEMBERS OF THE GENERAL ASSEMBLY, AND JUDICIAL OFFICERS; AND FOR OTHER PURPOSES." The Bill applies to: 1) persons elected to "state constitutional office[s]," which presumably includes the seven state constitutional offices of Governor, Lieutenant Governor, Secretary of State, Attorney General, State Treasurer, State Auditor and Commissioner of State Lands; 2) persons elected to the Arkansas House of Representative and Arkansas Senate; and 3) persons elected to an elected judicial office, which is defined as including the offices of district judge, circuit judge, Court of Appeals judge or Justice of the Arkansas Supreme Court. See SB 378, § 1. The bill sets out the procedure for recall, which involves the collection of petition signatures in the amount of fifteen percent of the qualified electors of the state for recall of state officers, and the signatures of thirty percent of the qualified electors of the district, where a district officer is sought to be recalled. SB 378, § 2. For statewide offices and state senators and representatives, a notice of intent to circulate a petition must be filed with the Secretary of State, stating the reason for seeking the recall. SB 378, § 3. Further procedures for filing petitions are detailed and the form of the petition is outlined.Id. §§ 3 and 4. Similar procedures are set out for recall of the remaining elected officials covered by the Bill, which would include district judges, circuit judges and Court of Appeals judges. See SB 378, §§ 5 and 6.
One of the as yet unadopted amendments you enclose changes the percentages that must be collected on a recall petition. The other as yet unadopted amendment would make several changes to the bill, the most prominent of which would detail the "grounds" for recall of elected judicial officers. Under the contemplated amendment, grounds for recall of an elected judicial officer means that the judicial officer has conducted himself in a manner that adversely affects the administration of his office and adversely affects the rights and interests of the public and has either: 1) committed an act or acts of malfeasance while in office; 2) violated his or her oath; 3) committed an act of misconduct in office; 4) failed to perform duties prescribed by law; or 5) willfully misused public property or funds.
In my opinion Senate Bill 378 is unconstitutional with or without the contemplated amendments. The Arkansas Supreme Court has held that the Arkansas Constitution provides an "exclusive scheme" for dealing with removals from office. This is true at least as to those officers whose removal is addressed by the Arkansas Constitution. The Arkansas Constitution addresses the removal of every officer covered by Senate Bill 378.[1]
In Speer v. Wood, 128 Ark. 183, 193 S.W. 785 (1917), a circuit court, acting under a statute passed by the General Assembly, attempted to suspend a prosecuting attorney from office during the pendency of an indictment against him. The Arkansas Supreme Court restrained the circuit court from suspending the prosecutor, holding that there is no power in the legislature to provide for removal of state officers otherwise than by the court of impeachment. The court first reviewed the relevant provisions of the Arkansas Constitution as to removal from office and then reached its conclusion:
 The Constitution of 1874, art. 15, provides for the impeachment of State officers before the senate sitting as a court of impeachment, the sole power of initiating the proceedings being vested in the House of Representatives. . . . There is further provision in that article for the removal of State officers by the governor upon the joint address of two-thirds of the members elected to each house of the General Assembly. Those provisions, it is to be observed, apply only to State officers. . . . Sec. 27, art. 7, of the Constitution of 1874, reads as follows: `The circuit court shall have jurisdiction upon information, presentment, or indictment to remove any county or township officers from office for incompetency, corruption, gross immorality, criminal conduct, malfeasance, misfeasance or nonfeasance in office.'
 It is thus seen that there is a constitutional scheme provided for the removal of all officers, State, county and township. . . . The provision for impeachment of State officers might, if standing alone in the Constitution, be susceptible to the construction that it is not intended as an exclusive method of removal of such officers, but when considered in its relation to the other provisions prescribing a different method of removal of county and township officers, it is evident that the framers of the Constitution intended to erect an exclusive scheme of dealing with the subject of removals from office.
* * *
 At any rate, a majority of the court reach the conclusion that the two provisions of the Constitution referred to in the outset were intended to operate exclusively and that there is no power in the Legislature to provide for judgments of removal of State officers otherwise than by the court of impeachment.[2]
128 Ark. at 186-87 and 189-90. (Emphasis added). See also Leonard v.Luther, 185 Ark. 572, 576, 48 S.W.2d 242 (1932) (stating that: "[i]t is well settled that where the Constitution creates or recognizes an office, and declares that the incumbent may be removed in a specified manner or for specified reasons, the Legislature cannot constitutionally provide by statute for his removal for any other reason or in any other manner" citing Throop on Public Officers, p. 343).
All of the elected state constitutional officers, Supreme Court justices, circuit judges and in fact "all State officers" are liable to impeachment. See Arkansas Constitution, art. 15, § 1. The Governor may also remove certain state constitutional officers and judges upon the joint address of two-thirds of the members elected to each house of the General Assembly. See Arkansas Constitution, art. 15, § 3. In addition, judges are subject to removal by the Arkansas Supreme Court under Arkansas Constitution, Amendment 66, adopted in 1988 (creating and empowering the Arkansas Judicial Discipline and Disability Commission). Amendment 66 provides that it is "alternative to, and cumulative with, impeachment and address authorize by this Constitution."[3] Finally, constitutional authority to expel members of the General Assembly is granted each house of the General Assembly at Arkansas Constitution, art. 5, § 12. In addition, each house of the General Assembly is the "sole judge" of the qualifications of its members. See Arkansas Constitution, art. 5, § 11. The Arkansas Constitution's "exclusive scheme" discussed in Speer v. Wood thus also includes art. 5, §§ 11 and 12 as to removal of members of the General Assembly and has been supplemented to include Amendment 66 as to justices and judges.
The holding of the Speer case that constitutional provisions for removal are exclusive is in accord with the great weight of authority on the question. See Shartel v. Brunk, 326 Mo. 1181, 34 S.W.2d 94 (1930) (stating, in holding that the State Treasurer could not be removed from office otherwise than by impeachment, that: "[c]ourts in other jurisdictions and textwriters who have dealt with the question are practically unanimous in holding that where the Constitution prescribes the causes for which and the methods by which an officer may be removed, such causes and methods are exclusive," citing Speer v. Wood supra;Cooley's Constitutional Limitations; C.J.S.; Throop on Public Officers;and Mecham on Public Offices Officers).
The rule appears to apply equally to state constitutional officers, judges and members of the General Assembly. See State ex rel. Nixon v.Moriarty, 893 S.W.2d 806 (Mo. 1995) (Secretary of State); Laverty v.Cochran, 132 Neb. 118, 271 N.W. 354 (1937) (constitutional officers of the state); Shartel v. Brunk, supra (State Treasurer); In reInvestigation of a Circuit Judge, 93 So.2d 601 (Fla. 1957) (circuit judge); State Bar of California v. Superior Court, 207 Cal. 323,278 P. 432 (1929) (superior court judge); State v. Dunson, 138 La. 131,70 So. 61 (1915) (justice of the peace); Falloon v. Clark, 61 Kan. 121,58 P. 990 (1899) (district court judge); Magnus v. Carr, ___ Ark. ___, ___ S.W.3d ___ (October 24, 2002) Corbin, Glaze, and Imber JJ. concurring, (Article 5 of Arkansas Constitution placed exclusive jurisdiction of question of whether State Representative is qualified to serve in legislative branch); Reaves v. Jones, 257 Ark. 210, 515 S.W.2d 201 (1974) (each house of the General Assembly has sole power to expel a member); and State ex Rel. Danforth v. Hickey, 475 S.W.2d 617 (Mo. 1972) ("generally recognized rule in this country has been that constitutional provisions . . . vest sole authority in the legislative body of which the senator or representative is a member to decide whether he has forfeited his office and should be ousted for reasons arising during his term but after he has been seated").
None of the cases cited above, however, involved a challenge to a recall provision. It must be determined, therefore, whether the nature of recall provisions somehow excludes them from operation of the general rule of exclusivity above. I can find nothing to suggest that recall legislation is exempt from the general rule discussed in Speer v. Wood.[4] The power for removal of the officers mentioned in Senate Bill 378 must be found in the constitution. See generally, Comment, Removal and Disciplineof Judges in Arkansas, 32 Ark. L. Rev. 545 (stating that: "[p]resumably, statutorily mandated removal without a constitutional counterpart would fall outside of the Speer language and would be unconstitutional unless it complies with the appropriate constitutional mechanism"). Although it might be argued that the General Assembly, in providing a statutory recall procedure, is merely granting the people a power already reserved to them by Arkansas Constitution, art. 2, § 1, in my opinion this argument would fail. This section of the Constitution provides that:
 All political power is inherent in the people and government is instituted for their protection, security and benefit; and they have the right to alter, reform or abolish the same in such manner as they may think proper.
An attempt to argue that a similar provision guaranteed the people the right of recall was rejected in Eisenberg, Clerk v. The Committee toRecall Levin, 175 N.J. Super. 115, 417 A.2d 1067 (1980). The court stated that: "[w]hile it may be argued that the removal of an elective official is a minimal form of alteration or reformation of government, and is thus guaranteed by [this provision,] our Supreme Court has expressly held that there is no constitutional right to recall office holders." Id. at 1068,citing Roman v. Sharper, 53 N.J. 338 (1969). Although New Jersey statutes apparently provided some opportunity for recall in certain forms of municipal government, New Jersey did not at that time have a constitutional provision authorizing recall.[5] The state of the law is similar in Arkansas. In Arkansas, there is no constitutional provision authorizing the recall of elected officials. There is some opportunity, however, to recall officials at the local level whose removal is not otherwise addressed by the Arkansas Constitution. See e.g., A.C.A. §14-47-112 (regarding recall of city directors in cities with the city manager form of government); and A.C.A. § 14-48-114 (regarding recall of mayors and directors in cities with the city administrator form of government). See also Op. Att'y. Gen. 99-137 (question of whether mayor could be recalled depended upon form of municipal government). The removal of municipal officials is not addressed in the Arkansas Constitution.
In my opinion, because Senate Bill 378 applies to officers whose removal is exclusively addressed by the Arkansas Constitution, it is unconstitutional. The methods of removal set out in the Arkansas Constitution for these officers constitute the exclusive mode of removal. If recall is to be instituted in Arkansas, it must be accomplished by constitutional amendment.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] Although the exact status of "district judges" under Amendment 80
to the Arkansas Constitution might be debated, there is no question that a method for their removal is provided by Amendment 66.
[2] But see, Constitutional Crisis: Can the Governor (Or Other StateOfficeholder) Be Removed From Office In a Court Action After BeingConvicted of a Felony? 50 Ark. L. Rev. 221 (concluding that Speer v.Wood does not prohibit a state officer from being removed from office due to ineligibility, arising, for example, from conviction of a felony).
[3] Although Amendment 66 authorizes the grounds for suspension, leave or removal of judges to be determined by legislative enactment, Amendment 66 and the impeachment and joint address provisions, in my opinion, provide the exclusive method by which judges and justices may be removed from office, thus precluding a statutory recall procedure for such officers.
[4] Opinion 87-7, issued by one of my predecessors, does not persuade me to the contrary. It was concluded therein that: "the Arkansas Constitution does not prohibit the legislature from enacting laws for recall elections." In addition to the fact that Opinion 87-7 does not cite Speer v. Wood, the cases from other jurisdictions upon which the opinion relies to support its conclusion are distinguishable. Two of the cited cases, Groditsky v. Pinckney, 661 P.2d 279 (Colo. 1983) and Wigleyv. South San Joaquin Irrigation District, 31 Cal. App. 162, 159 P. 985
(1916) were decided in states with constitutional provisions authorizing recall. The remaining cases each involved municipal recall elections and in two of those, constitutional provisions invested the municipalities with power to adopt charters, in which recall provisions were contained, and each constitution stated that all officers not liable to impeachment shall be subject to removal for misconduct as may be provided by law. SeeHilzinger v. Gillman, 56 Wash. 228, 105 P. 471 (1909) and Dunham v.Ardery, 43 Okla. 619, 143 P. 331 (1914).
[5] In 1993, however, the people of New Jersey adopted a constitutional provision regarding recall. See New Jersey Constitution, art. 1, para. 2(b) and Committee to Recall Casagrande v. Casagrande,304 N.J. Super. 496, 701 A.2d 478 (1997).