OMNI FARMS, INC. *v.* ARKANSAS
POWER & LIGHT COMPANY

80-137                                            607 S.W. 2d 363
Supreme Court of Arkansas
Opinion delivered November 10, 1980
[Rehearing denied December 8, 1980.]

*Thurman & Capps, Ltd.*, for appellant.

*House, Holmes & Jewell*, for appellee.

GEORGE ROSE SMITH, Justice. In August, 1978, the Public Service Commission authorized the appellee, Arkansas Power & Light Company, to construct a generating plant in Independence county and about 170 miles of connecting high-voltage transmission lines to points in Pulaski and Lonoke counties. Pursuant to that authorization A.P. & L. brought this condemnation suit 18 months later to acquire a 180-foot right of way across a cattle ranch owned by the appellant, Omni Farms, Inc., in Lonoke county. In its answer Omni asked that the action be dismissed because, first, A.P. & L. had allegedly made no effort to negotiate a settlement with Omni before filing suit, and second, "the laws relied upon by Plaintiff are unconstitutional on due process grounds."

After a preliminary hearing the trial court rejected both defenses, approved the condemnation, and ordered a $15,000 deposit as the estimated value of the 17.14 acres being taken.

The court, however, to avoid a possibility of irreparable injury to Omni, stayed the judgment pending this appeal. The case has not yet been tried on the main issue of the amount of compensation to be awarded. Our jurisdiction rests on Rule 29 (1) (c).

At the outset, A.P. & L. asks that the appeal be dismissed for want of an appealable order. The record indicates that the proposed transmission lines will be strung on tall metal towers, embedded in concrete. At the oral argument counsel for A.P. & L. conceded that if the construction is allowed to proceed, it will be impossible in the event of a reversal for Omni's land to be restored to its previous condition. We conclude that this is one of the comparatively rare instances, foreseen by some of our earlier opinions, in which an order must be regarded as appealable because otherwise the order would divest a substantial right in such a way as to put it beyond the power of the court to place the party in its former condition. See *Johnson* v. *Johnson*, 243 Ark. 656, 421 S.W. 2d 605 (1967); *Batesville* v. *Ball*, 100 Ark. 496, 140 S.W. 712, Ann. Cas. 1913C, 1317 (1911).

On the merits, Omni first argues that the controlling statute mandatorily requires the condemnor to negotiate with regard to the purchase price before bringing suit to condemn and that a failure to negotiate is a jurisdictional defect so fundamental as to require dismissal of the action.

We do not agree. Unquestionably the legislature is free to require preliminary negotiation as a condition precedent to the exercise of the power of eminent domain. Courts elsewhere have frequently construed as mandatory various statutes contemplating such preliminary negotiations and have sometimes indicated that a condemnation order entered without prior negotiation is absolutely void for want of jurisdiction. The cases have been extensively collected in Nichols' Eminent Domain, § 24.62 (rev. 3rd ed., 1976), and need not be reviewed here.

The language of the particular statute, however, must be considered. Our General Assembly has said, for example, that in certain condemnation actions brought by state

colleges the board of trustees must first "exercise every reasonable effort to obtain the property in question at a reasonable price by negotiation, and the Trial Court shall so find." Ark. Stat. Ann. § 80-3318 (Repl. 1980). If language such as that were now before us, Omni's argument would have greater force.

The statute controlling this case is vastly different from that just quoted. It provides that whenever a utility company has obtained from the Public Service Commission the required certificate of environmental compatibility and public need, and the utility "is unable to reach agreement with the owner of land . . . to construct, operate, maintain and obtain reasonable access to the major utility facility, it may acquire the same by the exercise of the power of eminent domain." Ark. Stat. Ann. § 73-276.15 (Repl. 1979). It was evidently the intention of the legislature to require preliminary negotiation, which has often proved to be immensely beneficial to both parties when a condemnation suit is being considered. We accordingly hold, in harmony with the great weight of authority, that the statute now in question imposes a mandatory duty on the utility company to negotiate.

It does not follow, however, that the duty is necessarily of such indispensable importance as to be jurisdictional. By analogy, many steps required by the election laws are mandatory, but noncompliance does not destroy the validity of the election unless the statute expressly so declares or unless the particular provision affects an essential element of the election, as by obstructing the free and intelligent casting of the vote. *Orr* v. *Carpenter*, 222 Ark. 716, 262 S.W. 2d 280 (1953).

The statute now in question does not expressly declare preliminary negotiations to be jurisdictional, nor in our opinion does it do so by implication. The opportunity to negotiate does not end with the filing of the suit, especially as several months may pass before the case is set for trial. Moreover, if negotiation were a jurisdictional requirement, it would follow that a condemnation judgment entered after a long and hotly contested trial would be void if it were later shown that the condemnor failed to negotiate. The wording of the statute

would have to be decidedly more imperative than it is before we could regard negotiation as jurisdictional.

The trial court's finding that A.P. & L.'s negotiation procedure met the requirements of the law is not clearly erroneous. A.P. & L.'s appraiser testified that the value of the 17.14 acres being taken for a right of way was $875 an acre, making a total of about $15,000. Another witness for A.P. & L. testified that he had authorized settlement offers through the company's attorneys; the trial court took notice that the negotiations had not been successful. William Fay Wright, Omni's president, testified on cross examination that on the morning of the hearing Omni's attorney had informed Wright of an offer of $15,000. "When I heard $15,000, it was so ridiculous he [the attorney] wouldn't bring anything like that to me. It would only tend to upset me." He said the offer would not be accepted under any circumstances. Negotiations need nto be carried farther than to demonstrate the impossibility of agreement, which may be shown by the landowner's willingness to sell only at a price which the condemnor deems excessive. *Kerr* v. *Raney*, 305 F. Supp. 1152 (W.D. Ark. 1969); see also Nichols, supra. That appears to have been the situation in the case at bar; so no error is shown.

Omni's alternative ground for dismissal is its assertion that the governing statute denies due process of law. The statute is Act 164 of 1973, amended by Act 866 of 1977. Ark. Stat. Ann. §§ 73-276.1 through -276.18. Omni's argument is really directed not so much to the terms of the statute as to Omni's failure to receive sufficient notice of the Public Service Commission proceeding by which A.P. & L. was authorized to cross Omni's land. Consequently we need to discuss the statute and the proof only as they relate to the matter of notice. Upon this branch of the csae it must be kept in mind that Omni is attacking the procedure as a denial of due process and therefore has the burden of proving its invalidity. *Rebsamen Motor Company* v. *Phillips*, 226 Ark. 146, 289 S.W. 2d 170, 57 A.L.R. 2d 1256 (1956); *State ex rel. Kimberlite Diamond Mining & Washing Co.* v. *Hodges*, 114 Ark. 155, 169 S.W. 942, L.R.A. 1916F, 122 (1914).

The statute requires the Commission to make various findings as to the probable environmental impact of the proposed facility. § 73-176.8. With respect to such matters of general public interest the statute provides for actual notice to specified governmental agencies and for notice by publication to persons residing in affected municipalities and counties. § 73-276.4. Omni does not appear to be concerned about these environmental matters, but even if it were concerned it has not met its burden of proving any want of notice in this aspect of the case.

What Omni does seem to be concerned about, as nearly as we can tell from its meager proof, is the particular location of the right of way that will cross its land. On this point Wright mentioned an airport that Omni has built on its land, but he did not say just how the proposed line might interfere with the airport (except possibly by a reference to a plastic overlay which has not been brought to our attention). In fact, the construction of the airport, which took only about two months, was not even begun until some three months after A.P. & L. had notified Omni in September, 1979, that in the very near future surveyors would be on the land to make a final location of the transmission line route on the ground.

As we understand Omni's argument, it is contended that Omni did not receive adequate notice about just where the transmission line was going to cross its property. Omni concedes that it is not entitled to procedural due process concerning the necessity for the taking *unless* the legislature has provided a forum in which the landowner may contest that necessity. *Bragg* v. *Weaver*, 251 U.S. 57 (1919). Omni argues that the legislature did designate the Public Service Commission as such a forum, but Omni did not receive adequate notice of the proceedings to be conducted by the Commission. Specifically, Omni insists that although it received letters from A.P. & L. informing it of the pendency of the proceedings, those letters stated that Omni would be notified of the time and place of a hearing to be scheduled by the Commission in connection with A.P. & L.'s application as soon as the Commission advised A.P. & L. of the schedule. That follow-up information was not received by Omni.

We do not find this argument persuasive. The Commission's primary concern was with environmental matters, which were presumably to be considered at the hearing to which the letters referred. Omni has made no effort to show that the hearing mentioned in the letters would have touched upon any issue with which Omni was concerned.

Of course, the Commission had to fix the approximate location of the transmission lines to assess their environmental impact. That was eventually done, and the letters sent by A.P. & L. to Omni enclosed aerial photographs of Omni's land, showing the proposed location of the lines. Even when the Commission finally fixed the location of the lines in its order granting the application, the order expressly allowed some variation, up to 300 feet and possibly more, in the exact location of the right of way to accommodate the landowner.

We emphasize the fact that the two letters, one received by Omni in February, 1978, and the other in January, 1979, contained much substantial information in addition to the aerial photographs. Omni was informed of the nature of the proceeding before the Public Service Commission. Omni was told that informtaion about its right to intervene in the proceeding could be obtained from the Secretary of the Commission, whose name, address, and telephone number were given. The writer of the letters offered to discuss any questions about the proposed facility with Omni, giving his name and address, with a long distance telephone number that Omni could use free of charge.

Neighbors of Omni did call A.P. & L. in response to similar letters. The Commission's final order details modifications in line locations made in response to interventions by other landowners. The letters were certainly sufficient to put a reasonably prudent person on inquiry, which means that Omni is charged with notice of all facts such an inquiry would have revealed. *Kellogg-Fontaine Lbr. Co.* v. *Cronic*, 219 Ark. 170, 240 S.W. 2d 872 (1951). Unquestionably Wright must be taken to have known that the Commission would not hold a hearing upon Omni's particular problems with respect to its particular land unless Omni took the initiative in bringing those problems to the Commission's

attention. But no move in that direction was made. Omni did file a petition for rehearing with the Commission, but it is not shown what it contained nor whether Omni might have had a remedy by appealing from the denial of the petition.

Omni's due process argument boils down to this. It complains that A.P. & L. failed to give it the promised notice of a Commission hearing, the nature of which Omni has not shown. Omni did receive actual notice, once in February, 1978, and again in January, 1979, that the line was to cross its ranch. Details and sources of information were supplied, but Omni and Wright apparently paid little if any attention to the matter until receiving notice that A.P. & L.'s surveyors would be on the ground soon after September, 1979, more than 18 months after the February letter. We still do not know exactly what Omni's objections to the proposed line may be, because the record is practically silent on that pivotal point. We cannot say that Omni has proved a denial of due process of law by any lack of notice of the impending condemnation.

Affirmed.

FOGLEMAN, C. J., and HICKMAN, J., concur.

DARRELL HICKMAN, Justice, concurring. I agree with the majority's disposition of this case, but for different reasons.

In my judgment the Arkansas General Assembly delegated to the Public Service Commission the authority to find that a necessity existed for the power line. The General Assembly also delegated the power to approve the location of the line. There are notice requirements in that law as the majority has indicated. I cannot say whether the Public Service Commission directed Arkansas Power and Light to notify the landowners of the hearing since that is not in the record, but it would appear that that is the case. In any event, Arkansas Power and Light did notify the landowners that there would be a hearing and apparently told this particular landowner that it would be notified of the time and place of the hearing. I cannot say on this record whether Arkansas Power and Light did that. To do so would, in my judgment,

mean that I would have to find that the trial court was clearly erroneous.

For these reasons, I concur in the decision the majority has reached.

FOGLEMAN, C. J., joins in this concurrence.