Edgar K. RIDDICK *v.* Garland STREETT, et al.

92-211                                              858 S.W.2d 62

Supreme Court of Arkansas
Opinion delivered July 5, 1993

*Crockett, Brown, & Worsham, P.A.*, by: *C. Richard Crockett*, for appellants.

*Ivester, Skinner, & Camp, P.A.*, by: *Hermann Ivester* and *Todd A. Lewellan*, for appellees.

JAMES B. SHARP, Special Chief Justice. The record in this case consists of more than 3,000 pages, over 200 exhibits, and over 100 findings of fact by the Chancellor. The new rules of this Court did not go into effect until May 1, 1993. Rule 9(b) in effect at the time that the Appellants' Brief was filed herein in part stated, ". . . the Appellants' Abstract and Brief shall begin with a concise statement of the case, without argument. This statement, ordinarily not exceeding two pages in length, should be sufficient to enable the court to read the Abstract with an understanding of the nature of the case, the general fact situation, and the actions taken by the Trial Court." In spite of the facts above recited concerning the number of pages of the record, the number of exhibits, and the number of findings of fact by the

Chancellor, the Appellant is not justified in writing a 19-page Statement of the Case, and certainly not without leave of this Court to do so.

The Appellants' Statement of the Case is in reality a lengthy introductory argument that fails entirely to comply with Supreme Court Rule 9(b).

Garland Streett, Sandra K. Streett, Robert V. Light, Cherry Light, Thomas F. McLarty, III. Donna McLarty, Jack L. Tyler, and Ann Tyler are residents and owners of lots located in Greenbrier Subdivision. Edgar K. Riddick purchased property now known as Greenbrier Subdivision from Louise S. Vinson in 1960. Jackson T. Stephens, Jr., and Nancy Stephens own a lot in Greenbrier that abuts the lot in Edgehill Subdivision on which they reside. Edgar Riddick was the owner, developer, surveyor, subdivider, and marketer of Greenbrier Subdivision and its constituent lots. Numerous problems and disputes between lot owners and Mr. and Mrs. Riddick developed as to the proper location of boundaries and boundary markers within Greenbrier and along Cantrell Road. Numerous surveyors experienced surveying problems because of large discrepancies on the plat of Greenbrier and between the plat and apparent claims of usage and of ownership. Using the distances shown as the boundaries, and the various angles at which those boundaries ran, all as shown on the Greenbrier Subdivision Plat, it was a mathematical fact that the figures of that subdivision would not close. That resulted in·numerous discrepancies in the dimensions and locations of the various plots in that subdivision and those distances and angles shown on that plat.

The Appellees brought suit against Edgar K. Riddick, Jr., and June Riddick seeking (a) to have the Chancellor fix the boundaries of Greenbrier along Cantrell Road and between the lots in Greenbrier in a manner consistent with representations as to the lot dimensions, and the areas and the locations contained within the plat and Bill of Assurance and verbal and written representations of the Riddicks, (b) to have Greenbrier resurveyed to reflect the Chancellor's decision regarding boundaries and to eliminate the multitude of problems inherent in the deficiencies in the plat, (c) to have the Riddicks bear the cost of the resurvey, (d) reformation of the Greenbrier Plat and Bill of

Assurance and Deeds to property in Greenbrier to conform with the resurvey and reformed plat, (e) easements by prescription, implication, necessity, and estoppel for ingress and egress to certain of the Appellees' lots in Greenbrier over a lot owned by the Riddicks, (f) injunctive relief, (g) damages for unjust enrichment, and (h) an award of attorneys' fees. The Appellees also sought to have the Riddicks estopped to deny that the boundaries should be fixed in accordance with the Riddicks' various representations.

June Riddick counterclaimed for damages on the ground that the lawsuit was frivolous, an abuse of process, and intended to cause her stress and mental anguish.

The City of Little Rock, Troy and Nicholas, Inc., Residential Funding Corporation, Randall Byars, Janice Byars, Sheffield Nelson, Mary Lynn Nelson, and the Arkansas State Highway Commission were named as necessary parties pursuant to Rule 19 of the Arkansas Rules of Civil Procedure. No affirmative relief was sought against these defendants. The Highway Commission was dismissed prior to trial on the ground of sovereign immunity. The City of Little Rock requested in its Answer that the Chancellor order an accurate resurvey and replatting of Greenbrier in compliance with the subdivision ordinance.

In the Findings of Fact and Conclusions of Law, the Chancellor (a) estopped the Riddicks from denying that the boundaries should be fixed in accordance with the Riddicks' various representations, (b) fixed the boundaries of Greenbrier along Cantrell Road and the boundaries of all lots within Greenbrier, (c) ordered that Greenbrier be resurveyed in accordance with specified guidelines and that an accurate plat based on the resurvey be prepared, submitted to the City of Little Rock for approval, and filed of record, (d) ordered that the Greenbrier Plat and Bill of Assurance and the deeds to the lots in Greenbrier be reformed to conform to the new survey and plat, (e) ordered the Riddicks to bear the cost of the resurvey, (f) declared that easements for ingress and egress over the private drive exist for the benefit of the various lot owners, (g) denied the Appellee Streetts' claim for unjust enrichment without addressing the merits of the claim, (h) denied the Appellees' requests for injunctive relief and attorneys' fees, and (i) denied June Rid-

dick's counterclaim for damages. A timely appeal was filed by the Appellants and a timely cross-appeal was filed by the Appellees.

In reviewing the Chancellor's findings, this Court does not reverse unless it finds that they are clearly erroneous or clearly against a preponderance of the evidence. Ark. R. Civ. P. 52(a). This Court defers to the superior position of the. chancellor to judge the credibility of the witnesses. *Brown* v. *City of Stuttgart*, 312 Ark. 97, 847 S.W.2d 710 (1993); *McElroy* v. *Grisham*, 306 Ark. 4, 810 S.W.2d 933 (1991).

Our decision is based upon the fact that the present plat and Bill of Assurances constitute a cloud upon the title of all of the parties to this litigation, and in order to remove that cloud upon the title to the real estate involved, a replatting of that subdivision and a new Bill of Assurances must be made. Since this opinion is based upon removal of the clouds upon the title of these parties, we do not reach the questions of any taking of the Appellants' land, reformation of any documents, planning of any fraud by any party, or any questions concerning the statutes of limitations.

All of the grantors of all of the parties, or their heirs, would be necessary parties to an action for reformation of a deed. *Harbour* v. *Sheffield*, 269 Ark. 932, 601 S.W.2d 595 (1980); *Goldsmith* v. *Stewart*, 45 Ark. 149 (1885).

We held in *Dotson* v. *Aldridge*, 246 Ark. 456, 438 S.W.2d 464 (1969), that ". . . we do not agree that the statute of limitations prohibits a person in possession from suing to remove a cloud upon his title even though the cloud had been in existence and within the knowledge of the possessor for more than seven years." While it is true that each of the parties here is not in possession of all of the land in Greenbrier, each party is in possession of some land in Greenbrier. And since the present plat of Greenbrier and the present Bill of Assurances themselves constitute clouds upon the title of the parties, the possession that each party does have is sufficient to take this situation out of the statute of limitations.

"The remedial processes of equity are quite flexible, and where there is a manifest right clearly recognized, in equity jurisprudence they cast about for some fit mode of enforcing it, if no exact precedent may be found applicable to the case."

*Goldsmith* v. *Stewart, supra.* "A court of equity can fashion the relief justified by the proof. *Keith* v. *Barrow-Hicks Ext. Imp. Dist.*, 275 Ark. 28, 626 S.W.2d 951 (1982)." *Roe* v. *Dietrich*, 310 Ark. 54, 835 S.W.2d 289 (1992).

While we have found no Arkansas Case authorizing an entire subdivision to be replatted, once the decision has been made that a replatting is necessary in order to remove the clouds upon the titles to these parties, the Chancellor is authorized to take such actions as may be necessary in order to remove such clouds upon the title.

■ Only by a replatting can these many clouds upon the various titles of the parties be removed. Only by a replatting can this be done with a clear, definite, and easily definable result. Under these circumstances, the Chancellor had good reason to appoint a surveyor to perform the duties required by her decree, as here modified. *McDonald* v. *Roberts*, 177 Ark. 781, 9 S.W.2d 80 (1928); *Walker* v. *Walker*, 8 Ark. App. 297, 651 S.W.2d 116 (1983).

■ In a long line of cases we have held that the decree of the Chancellor should describe the boundary line between disputing land owners with sufficient specificity that it may be identified solely by reference to the decree. In *Harris* v. *Robertson*, 306 Ark. 258, 813 S.W.2d 252 (1991), we held that the decree itself must describe the boundary line, and it must be done, ". . . without reference to a plat which may not be in existence in a few years."

That line of cases, however, is distinguished from the case before us in two ways. First, those cases involved only a dispute between adjoining landowners, not a multitude of landowners, few of which were adjoining landowners, and not numerous surveying angles and distances. Even with over two hundred findings of fact by the Chancellor, all of these surveying angles, distances and points of reference could not be fully described. Second, in none of those cases was an entire subdivision to be replatted, and that replat eventually filed for record in the official plat book in a county's real estate records. *Harris* v. *Robertson, supra; McDonald* v. *Roberts, supra.*

After that subdivision has been replatted and the Bill of

Assurances written to conform to the plat, in accordance with these directions, and under the supervision and approval by the Chancellor, that plat should then be filed of record, after it has been approved under the applicable ordinance of the City of Little Rock.

■ Therefore, we instruct the Chancellor to have the designated surveyor to replat the land encompassed in the Greenbrier Subdivision, to fit into that plat the street, and the utility rights of way now actually existing in Greenbrier. That replat shall encompass the area bounded by Edgehill Subdivision, Allsopp Park, and the present right of way line on the inside curve of State Highway 10 along Cantrell Road. In doing so, the Chancellor should have this done under her supervision and control. The Chancellor shall instruct that surveyor to use the Chancellor's findings of fact where they are applicable to that purpose. We designate that as the "Official Replat."

The Chancellor's decree stated in paragraph 2 (f), found at page 141 of the abstract of the record, "After the boundary between Plot 9 and 10 is fixed as stated above, the corner of Plot 7, 9 and Edgehill Subdivision shall be fixed at 1/2" rebar located S 40 degrees 03 minutes 43 seconds E 222.08 feet from the northern most Edgehill Subdivision concrete monument along Plot 7. The boundary line between Plot 7 and Plot 9 shall extend from said corner S 40 degrees 38 minutes 54 seconds W to the center line of the private drive."

■ In that paragraph 2 (f) a mistake was made in the two angles recited. The first angle there should be, "N 40 degrees 03 minutes 43 seconds W", and the second angle there should be, "N 40 degrees 38 minutes 54 seconds E."

Following the Chancellor's approval of the surveyor's work in preparing the Official Replat, following its approval by the appropriate authorities of the City of Little Rock, this Official Replat shall be refiled in the Plat Record Books of Pulaski County, Arkansas.

In making this Official Replat, that surveyor shall give due consideration to the following:

a. That part of the present Highway 10 right of way that would be necessary to have had Greenbrier contain whatever area

would have been contained in the 1930 Deed to Mrs. Vinson.

b. Reflect the actual location of Greenbrier Road as it now exists.

c. Reduce the measurements on the Official Replat for those parts of the plots between where Greenbrier Road actually is and where the present right of way actually is on the inside curve line of Highway 10. That surveyor may use a preliminary plat of the entire area that would have been covered by Mrs. Vinson's deed to assist him in establishing what certain angles should be on the Official Replat. The northeasterly boundaries in that preliminary plat no doubt will be far beyond the present right of way from the present inside curve of Highway 10. That part of the area shown on that preliminary replat that is North and East of the present right of way line of the inside curve of Highway 10 should be deducted from the area of the plots in Greenbrier that would have been North and East of the present right of way line of that inside curve of Highway 10. The Official Replat will show those plots reduced in their northerly and easterly dimensions by the area that will be shown on the preliminary plat to lie between the present right of way line of that inside curve of Highway 10 and the northeasterly boundary of that preliminary plat.

d. The Official Replat shall be located with reference to Edgehill Subdivision, Allsopp Park, the Northeast corner of Section Twenty Two (22), and the Southeast corner of the Northeast Quarter (NE 1/4) of Section Twenty Two (22), all in Township Two (2) North, Range Twenty Two (22) West, Pulaski County, Arkansas, and the present right of way of the inside curve of Highway 10.

e. Since the Vinson deeds involved with Highway 10 go, "to the side", "along the East line of Robinson Drive" or Cantrell Road, and since none of them go to the present curb line of Highway 10, the Official Replat as well as the Ownership Replat should go to the present Highway 10 right of way and not to the present curb line of Highway 10. It is too easy to destroy or change that present curb and the description in the Official Replat should be as definite and permanent as is possible.

■ In the Bill of Assurance and on the Official Replat, the distances, angles and directions shall be as shown on the Official

Replat, without directions that points on the ground be identified by reference to the surveyor's pins and pipes that he sets. The distances, angles and directions shall be as shown on the Official Replat.

Under her supervision and direction, using the Official Replat, and following the approval and filing for record of that Official Replat and Bill of Assurances, the Chancellor then shall have the surveyor prepare an additional copy of the Official Replat and incorporate on that second copy of the Official Replat, as we have modified them, the Chancellor's finding of facts as to easements and ownership of the area of Greenbrier Subdivision, whether by adverse possession, purchase, prescription, or permission. That second copy of the Official Replat, heretofore referred to as the "Ownership Replat" shall be incorporated into the Chancellor's decree. The Chancellor's decree shall remove the various clouds upon the titles to the respective real estate owned in Greenbrier Subdivision and decree the easements and ownership of the area of Greenbrier Subdivision as replatted, whether by adverse possession, purchase, prescription or permission of the various parties to this litigation.

June Riddick, wife of Edgar K. Riddick, counter-claimed on the basis that she had no part in creating the subdivision plat, and she sought damages on the ground that the claim against her was frivolous. The Chancellor found that June Riddick acted as a partner in development of the subdivision. The facts and circumstances found by the Chancellor to exist with regard to June Riddick justified the Chancellor in refusing to award any damages to her.

The Appellees claimed the Riddicks would be unjustly enriched if allowed to retain $29,972.69 as the result of an inequitable claim made by them against the Streetts having to do with ownership of subdivision property. The Chancellor found that the amount was spent by the Streetts for attorneys' fees in pursuing a settlement with a previous owner. We find no error in the Chancellor's conclusion that attorneys' fees are, absent statutory authorization, not to be recovered. No authority is cited or convincing argument made for the Appellees' contention that the Chancellor erred in "treating this claim as nothing more than a claim for attorneys' fees incurred in this case." The Chancellor

thus did not err in failing to find that the Appellants were liable for unjust enrichment with regard to the various tracts of land which they sold to some of the Appellees.

We find no error in the Chancellor's finding that no attorneys' fees should be allowed. In Arkansas, attorneys' fees are not allowed by courts unless such fees are by contract or by statute. *Continental Casualty Co.* v. *Sharp*, 312 Ark. 286, 849 S.W.2d 481 (1993); *Mercedes-Benz Credit Corp.* v. *Morgan*, 312 Ark. 225, 850 S.W.2d 297 (1993). The facts here do not fit under either category.

We affirm the Chancellor's Decree, as herein modified, and remand this case to the Chancellor with directions in carrying out the mandate of this Court.

Holt, C.J., and Hays and Brown, JJ., not participating.

Special Justices Dan M. Burge and Robert W. Henry join in this opinion.