Jane DOE *v.* UNION PACIFIC RAILROAD CO. et al.

95-682                                                    914 S.W.2d 312

Supreme Court of Arkansas
Opinion delivered February 5, 1996

*Duncan & Rainwater*, by: *Philip J. Duncan* and *Neil Chamberlin*, for appellant.

*Friday, Eldredge & Clark*, by: *William H. Sutton* and *John Dewey Watson*, for appellee Union Pac. R.R. Co.

*Friday, Eldredge & Clark*, by: *Tonia P. Jones* and *Will Bond*, for appellee Michael Ramone, D.O.

*Wright, Lindsey & Jennings*, by: *Sammye L. Taylor* and *Troy A. Price*, for appellees MoPac Employees Health Ass'n and MoPac Employees Health Ass'n Trust.

BRADLEY D. JESSON, Chief Justice. This appeal is taken from the trial court's denial of the appellant's motion to prosecute her lawsuit under the pseudonym "Jane Doe." We hold that the court's ruling is not a final, appealable order. Therefore, the appeal is dismissed.

The appellant visited the Oakwood Family Medical Center on March 9, 1992, where she was examined by Michael Ramone, D.O. The Center purportedly was operated by Union Pacific Railroad Company, the Missouri Pacific Employees

Health Association and the Association Trust. According to her complaint, the appellant was touched in an improper and sexually suggestive manner during the course of the examination.

On March 4, 1994, the appellant filed suit against the appellees seeking damages for negligence, medical malpractice, outrage and invasion of privacy. The caption to her complaint contained the name "Jane Doe" as plaintiff, but listed all defendants by name. The appellant's true identity was furnished to the appellees under separate cover.

The appellees objected to the appellant's use of the pseudonym and moved to dismiss the case. The appellant asked the court for leave to conceal her identity, citing the sensitive, private nature of the allegations in the complaint. The court denied the motion and gave the appellant ten days to file an amended complaint in her own name. The appellant filed a subsequent motion which incorporated a letter opinion from her psychologist. The letter stated that the appellant had been traumatized by the incident and suffered various emotional problems as a result. The trial court reviewed the letter and considered the appellant's motion in light of a number of federal court cases on the subject. *See, e.g., Doe* v. *Frank,* 951 F.2d 320 (11th Cir. 1992). The court then denied the motion, and entered an order finding that the appellant had not shown that the information to be disclosed was of the utmost privacy. The following language, attempting to certify the case for appeal, was also contained in the order:

> The Plaintiff's Motion for Certification for Appeal is granted. This court's order with respect to the issue of the Plaintiff's Motion for Leave to File Under Seal is final because the disclosure of the Plaintiff's identity would divest her of a substantial right and it would be beyond the power of this court to place her in her former condition. There is no just reason to delay appeal of this issue and a potential injustice would be alleviated by an immediate appeal.

The appellant argues first that the trial court's order is appealable because it complies with ARCP Rule 54(b). That rule allows interlocutory appeals under certain circumstances, but those circumstances are not present here. By its express language, Rule 54(b) pertains to orders in which fewer that all

*claims* or fewer than all *parties* are disposed of. The order in this case involves a ruling on a preliminary legal issue. It does not dispose of one of several claims or one of several parties.

Rather than analyze the appealability of the trial court's order under Rule 54(b), we refer to Rule 2 of the Arkansas Rules of Appellate Procedure. That rule contains a list of the types of orders from which an appeal may be taken. We note at the outset that Rule 2 does not expressly allow an appeal from a ruling which denies a party the right to prosecute her case in anonymity. What might be termed the general rule regarding appealability is stated in ARAP Rule 2(a)(2):

> (a) An appeal may be taken from a circuit, chancery or probate court to the Arkansas Supreme Court from:

> 2. An order which in effect determines the action and prevents a judgment from which an appeal might be taken, or discontinues the action.

We have interpreted this portion of Rule 2 to mean that, for an order to be appealable, it must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy. The order must be of such a nature as to not only decide the rights of the parties, but to put the court's directive into execution, ending the litigation or a separable part of it. *Kelly* v. *Kelly*, 310 Ark. 244, 835 S.W.2d 869 (1992). Certainly the court's order in this case did not dismiss the parties from the court or conclude their rights to the subject matter in controversy. The court's ruling was on a preliminary matter, unconnected with the merits of the litigation. The order cannot be considered as ending a separable branch of the litigation.

The appellant urges us to employ an exception to Rule 2 as we have done in the cases of *Omni Farms, Inc.* v. *Arkansas Power & Light Co.*, 271 Ark. 61, 607 S.W.2d 363 (1980) and *Gipson* v. *Brown*, 288 Ark. 422, 706 S.W.2d 369 (1986). In *Omni Farms*, the trial court entered an order approving condemnation of the appellant's land. The order would have allowed AP&L to begin immediate construction on the land, even though the issue of the amount of compensation remained to be decided. In *Gipson*, church members brought suit to obtain financial data

from the church management. The trial court entered a discovery order which had the effect of requiring the church to turn over much of the requested information. We allowed appeals in both instances, stating in *Omni Farms*:

> At the oral argument counsel for A.P.&L. conceded that if construction is allowed to proceed, it will be impossible in the event of a reversal for Omni's land to be restored to its previous condition. We conclude that this is one of the comparatively rare instances, foreseen by some of our earlier opinions, in which an order must be regarded as appealable because otherwise the order would divest a substantial right in such a way as to put it beyond the power of the court to place the party in its former condition.

In both of the above-cited cases, the trial court's ruling, while technically interlocutory in nature, had the practical effect of a final ruling *on the merits* of the case. That is not the situation here. This case is more analogous to *Scheland* v. *Chilldres*, 313 Ark. 165, 852 S.W.2d 791 (1993), in which the trial court rendered a decision on an important issue but did not, from a practical standpoint, conclude the merits of the case. *Scheland* involved an order requiring the appellant in a paternity action to undergo a blood test. We held that, while the issue might be an important one, an appeal was premature.

Finally, the appellant urges us to adopt an amendment of Rule 2 to allow this type of interlocutory appeal. We took this approach in the cases of *Herron* v. *Jones*, 276 Ark. 493, 637 S.W.2d 569 (1982) and *Ford Motor Credit Co.* v. *Nesheim*, 285 Ark. 253, 686 S.W.2d 777 (1985). In *Herron*, we declared that an order disqualifying counsel would be made appealable by amendment to Rule 2. In *Nesheim*, we did the same for an order certifying a case as a class action. However, the considerations which were present in those cases do not exist here. If a party's counsel is disqualified, the litigant is deprived of the counsel of his choice, must pursue his lawsuit with other counsel, and, if the trial court's order is later reversed, is entitled to start again with his original counsel. Similarly, if a class action, ordinarily a complicated and lengthy process, is allowed to proceed to its conclusion before being reviewed on appeal, the parties have again

gone through a useless process in the event of reversal. In this case, there is nothing to indicate that the appellant would not or could not prosecute her action in the absence of anonymity. We should also point out that she had the option to allow the issue to be decided on the appellees' motion to dismiss. Had the motion to dismiss been granted, a final order would have been in existence. The only showing before this court at this time is that it would be emotionally difficult for the appellant to pursue her lawsuit in her own name and that she would prefer not to do so. There is no showing, as there was in *Herron* and *Nesheim*, that burdensome and meaningless litigation would result in the absence of an appeal.

■ We hold that the appeal is premature and dismiss without prejudice to raise this issue upon the entry of a final order.

Appeal dismissed.

CORBIN, BROWN, and ROAF, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. I would accept this appeal and decide the issue under the test employed in *Omni Farms, Inc. v. Arkansas Power & Light Co.*, 271 Ark. 61, 607 S.W.2d 363 (1980) and *Gipson v. Brown*, 288 Ark. 422, 706 S.W.2d 369 (1986).

What Jane Doe requested in her briefs and at oral argument is that the style of this case, as contained in the permanent record, not reflect her real name. She has made her actual name available to counsel for Dr. Ramone. She is available for discovery and will appear at trial to testify in public. Any enterprising news reporter could ferret out her real name. Her true name may actually be used at trial; that is unclear. Her concern is history and whether the style of this case will permanently reflect her correct name.

The majority states the *Omni Farms* analysis that I would use in this case:

> At the oral argument counsel for A.P.& L. conceded that if the construction is allowed to proceed, it will be impossible in the event of a reversal for Omni's land to be restored to its previous condition. We conclude that this is

one of the comparatively rare instances, foreseen by some of our earlier opinions, in which an order must be regarded as appealable because otherwise the order would divest a substantial right in such a way as to put it beyond the power of the court to place the party in its former condition.

271 Ark. at 63, 607 S.W.2d at 364. Using the *Omni* standard, we should decide (1) whether a substantial right is involved, and (2) whether it will be lost if we fail to correct the matter before trial.

What I take issue with in the majority opinion is that it closes the door to appeals *in all instances* where going to trial would violate a party's *utmost privacy* rights. We should leave the door cracked for such rare appeals, even when a final order has not been rendered in the matter. This case differs from *Scheland* v. *Chilldres*, 313 Ark. 165, 852 S.W.2d 791 (1993). The *Scheland* case involved taking a blood test to establish paternity. Here, we are concerned with allegations of sexual invasion which are categorically different in terms of privacy considerations.

Other jurisdictions have accepted appeals of anonymity issues where utmost privacy was the question to be resolved. *See, e.g., James* v. *Jacobson*, 6 F.3d 233 (4th Cir. 1993) (artificial insemination by physician's sperm — anonymity allowed); *Doe* v. *Frank*, 951 F.2d 320 (11th Cir. 1992) (alcoholism — anonymity not allowed); *Doe* v. *Bodwin*, 119 Mich. App. 264, 326 N.W.2d 473 (1982). The Fourth Circuit Court of Appeals stated in *James* v. *Jacobson*:

> The decision whether to permit parties to proceed anonymously at trial is one of many involving management of the trial process that for obvious reasons are committed in the first instance to trial court discretion. This implies, among other things, that though the general presumption of openness of judicial proceedings applies to party anonymity as a limited form of closure, *see Stegall*, 653 F.2d at 185, it operates only as a presumption and not as an absolute, unreviewable license to deny. The rule rather is that under appropriate circumstances anonymity may, as a matter of discretion, be permitted. This simply

recognizes that privacy or confidentiality concerns are sometimes sufficiently critical that parties or witnesses should be allowed this rare dispensation. A necessary corollary is that there is a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted.

6 F.3d at 238.

In *Doe* v. *Bodwin*, the complaint was made that a psychologist had had sexual intercourse with the plaintiff, his patient, during therapy. A complaint was filed and a fictitious name invoked. The trial court ordered the plaintiff to identify herself publicly, but on appeal, the Michigan Court of Appeals reversed and remanded for reconsideration of whether utmost privacy rights were violated.

We should do the same analysis and determine whether a right of utmost privacy would be lost by going to trial rather than merely dismissing the matter for lack of a final order.

I respectfully dissent.

CORBIN and ROAF, JJ., join.