Phillip PETRUS, et al. *v.* The NATURE CONSERVANCY
and the Arkansas Natural Heritage Commission

97-156                                                957 S.W.2d 688

Supreme Court of Arkansas
Opinion delivered December 11, 1997

*Green, Henry & Green,* by: *David G. Henry,* for appellants.

*Marian M. McMullan, P.A.*, for appellees.

TOM GLAZE, Justice. This case is a sequel to *Nature Conservancy v. Kolb*, 313 Ark. 110, 853 S.W.2d 864 (1993). In *Kolb*, this court determined that the Nature Conservancy and Arkansas Natural Heritage Commission's predecessors–in–title had obtained a 100-foot-wide easement, not a fee simple interest, in a strip of land across the north half of a section of land in Lonoke County, so long as that land was used for railroad purposes. Kolb and others who owned property adjoining the disputed easement filed suit to quiet title, alleging that, when the right-of-way was no longer used for railroad purposes, all interest in the right-of-way reverted to them. The *Kolb* court upheld the trial court's ruling, adopting Kolb's and the adjoining landowners' contention.

The *Kolb* decision was relied on by Phillip and J. D. Petrus and six other Prairie County landowners (collectively Petruses) when filing this quiet title suit against appellees, Nature Conservancy and Arkansas Natural Heritage Commission (ANHC). The Petruses claimed that, in 1985, when the appellees' predecessors–in–title abandoned their railroad right-of-way easement located in Prairie County, the disputed easement automatically reverted to them as adjoining property owners. However, Nature Conservancy and ANHC counterclaimed, stating that, even if the Petruses' reliance on *Kolb* was correct, they had acquired title by adverse possession to the strip of land after it was abandoned in 1985.

After trial on the parties' respective issues, the trial court dismissed the Petruses' reversionary interest claim, and ruled the Nature Conservancy and ANHC had sustained their burden of proof, showing they had acquired title by adverse possession to the abandoned easement except for those portions of the old railroad right-of-way being used by the Petruses for farming, drainage, roadways, and wells under, across, and on the right-of-way. During trial, Nature Conservancy and ANHC stipulated that they did not intend to lay claim to those portions of the right-of-way the Petruses had continued to use after the easement had been abandoned for railroad purposes. In addition, they agreed to underwrite the expenses of conducting a survey to identify and legally

describe those portions of the right-of-way the adjoining appellant landowners continued to use.

The Petruses filed their appeal in the court of appeals, arguing only that Nature Conservancy and ANHC's proof was insufficient to show adverse possession, but the court of appeals certified the appeal to us, raising the question as to whether the trial court's decree was a final appealable order. The court of appeals suggests that, since the trial court purportedly quieted title in Nature Conservancy and ANHC, the court's decree should have specifically set out the legal description of the property, or portion thereof, to which each party and landowner had title. The court of appeals is right.

■ Under Rule 2(a) 1 and 2 of the Appellate Procedure — Civil, an appeal may be taken from a final decree entered by the chancery court and an order which in effect determines the action and prevents a judgment from which an appeal might be taken from, or discontinues the action. We have interpreted this portion of Rule 2 to mean that, for an order to be appealable, it must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy. *Doe v. Union Pac. R.R. Co.*, 323 Ark. 237, 914 S.W.2d 312 (1996). The order must be of such a nature as to not only decide the rights of the parties, but also put the court's directive into execution, ending the litigation or a separable part of it. *Id.*

■ In a long line of cases, this court has held that a chancery court's decree must describe the boundary line between disputing land owners with sufficient specificity that it may be identified solely by reference to the decree. *Riddick v. Streett*, 313 Ark. 706, 858 S.W.2d 62 (1993); *see also Harris v. Robertson*, 306 Ark. 258, 813 S.W.2d 252 (1991); *Rice v. Whiting*, 248 Ark. 592, 452 S.W.2d 842 (1970); *McEntire v. Robinson*, 243 Ark. 701, 421 S.W.2d 877 (1967). In the present case, the chancellor entered a decree captioned "Final Order" which purported to dismiss the Petruses' claims and found ANHC had prevailed on its adverse possession claim. Instead of identifying the boundary lines of the properties in dispute, the trial court's decree merely made the following relevant findings:

ANHC filed its claim of adverse possession only to those lands which were not actually being cultivated as farmlands by the [Petruses].

ANHC announced at the trial that it did not intend to lay a claim to the continued use of portions of the old railroad right-of-way presently being used by the [Petruses] including cultivation, drainage outlets, roadways, and wells under, across, and on the railroad right-of-way.

ANHC further announced at trial that in the event ANHC prevailed in its action for adverse possession, it would bear the expense of conducting a survey to adequately identify and legally describe the [Petruses'] respective uses of the right-of-way and [P etruses'] uses will be specifically reserved.

■ ■ Nowhere in the chancellor's decree is the property awarded to ANHC identified along with the portions excepted and reserved to the Petruses. Ordinarily, one who enters adversely under color of title and actually possesses any part of the tract is deemed to have possession of the entire area described in the document constituting color of title. *St. Louis Union Trust Co. v. Hillis*, 207 Ark. 811, 182 S.W.2d 882 (1944); *Bailey, Trustee v. Martin*, 218 Ark. 513, 237 S.W.2d 16 (1951). Obviously, neither the chancellor nor the respective parties intended for this settled rule of property to apply to the circumstances here, since ANHC claimed only the disputed right-of-way minus those portions the Petruses continued to farm and use. While the chancellor and the parties apparently intended to resolve the boundary lines via a future survey, the permanent record in a boundary-line decision should describe the line with sufficient specificity that it may be identified solely by reference to the order. *See Harris*, 306 Ark. at 261; *Riddick*, 313 Ark. at 712. Otherwise, leaving those lines to be established by a future survey may likely result in additional disputes, litigation, and appeals. Again, the case law that requires a chancery decree to fix and describe the boundary lines in a dispute between landowners discourages piecemeal litigation. *McEntire*, 243 Ark. at 704.

The suggestion has been raised that this court's more recent case of *Riddick v. Streett, supra,* might represent a departure from this court's exacting rule that requires the trial court's decree to set

out boundary line descriptions when deciding such landowner disputes. The suggestion is without merit. In *Riddick*, the court did factually distinguish that case from earlier cases, noting that *Riddick* involved a dispute between a multitude of landowners, rather than just adjoining landowners. Such a distinction, however, has no legal significance, since irrespective of the number of landowners involved, any such landowner dispute must be resolved by fixing and defining boundary lines. Unlike the case at hand, the chancellor in *Riddick* made over two hundred findings pertaining to ownership of properties. Although the *Riddick* court determined all surveying angles, distances, and points of reference were not fully described, it remanded the case for the chancellor to instruct the survey or to use the chancellor's and this court's findings pertaining to easements and ownership of the disputed area and from them, establish an official replat to be incorporated into an amended decree which would remove the various clouds on the landowners' titles to their respective real estate.

■ In sum, we hold this court's rule is well settled, and requires the chancellor to modify his decree to fix and define the boundary lines, including those establishing the Petruses' encroachments. Because we hold the appeal is premature and the decree lacks finality, we dismiss without prejudice. *See Doe*, 323 Ark. at 242.

NEWBERN, J., not participating.