The Honorable Tracy Steele State Senator Post Office Box 9267 North Little Rock, Arkansas 72119-9267
Dear Senator Steele:
You have requested my opinion on the following questions concerning the Arkansas Department of Human Services (DHS), the DHS's Office of Appeals and Hearings, and the so-called "1088 Exclusion Rule"[1]:
 A. Office of Appeals and Hearings
 1. It is my understanding the Appeals and Hearings section falls under the jurisdiction of the Office of Chief Counsel of DHS. Because of the *Page 2 
close association and the vested interest held by both offices in protecting the agency, does DHS have an internal conflict of interest and therefore opportunities for impartiality [sic] in adjudicating administrative legal matters?
 2. If a constituent believes impartiality [sic] and/or judicial bias has occurred in the handling of their specific case, are there legal avenues pursuable outside the DHS legal department and its sections?
 B. DHS — 1088 Exclusion Rule
 1. What is the purpose of disallowing family members who have not been formally accused of agency violations to carry out the duties of the individual(s) under investigation? What is the legal basis for the specific exclusion?
 2. The constituent feels a disproportionate amount of individuals/families directly affected by the 1088 Exclusion Rule are members of a minority group. Does this rule have a disparate impact on a certain racial class?
RESPONSE
In response to your first set of questions concerning the Office of Appeals and Hearings, the Arkansas Supreme Court has rejected the argument that there is a conflict of interest under the structuring of DHS's hearing process demonstrating bias or an appearance of bias. But if an individual nevertheless believes that partiality or bias has occurred in a specific hearing and there has been a final agency decision, then the avenue for relief outside DHS would be to seek judicial review of that decision. With regard to the Participant Exclusion Rule, the purpose is found in the rule itself: "It is also the intent of this policy to prevent excluded participants from substituting others, usually immediate family members, as surrogates to continue the practices that caused DHS to exclude the participant."[2] As for the legal basis for the exclusion, this is not stated under the rule, but as explained further below, it is probably implied from DHS's statutory charge to administer program(s). I lack the resources or the authority to decide your second question concerning the Participant Exclusion Rule. The reference to a "disproportionate" effect or a "disparate impact" on a minority group suggests a claim that the rule is racially discriminatory in violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Such a claim requires a review of all the surrounding facts and circumstances — an undertaking that is outside the scope of this *Page 3 
opinion. Generally, however, evidence of differential treatment will not, standing alone, state a cause of action under the Equal Protection Clause.
DISCUSSION Question 1 — It is my understanding the Appeals andHearings section falls under the jurisdiction of the Office of ChiefCounsel of DHS. Because of the close association and the vestedinterest held by both offices in protecting the agency, does DHShave an internal conflict of interest and therefore opportunitiesfor impartiality [sic] in adjudicating administrative legalmatters?
The Arkansas Supreme Court has rejected the argument that the structuring of the Office of Appeals and Hearings ("OAH") under the Department of Human Service ("DHS") Office of Chief Counsel, standing alone, demonstrates bias or an appearance of bias. InC.C.B. v. Arkansas Department of Health and Human Services,368 Ark. 540, 247 S.W.3d 870 (2007), the following challenge was mounted against the statutes and procedures utilized by DHS in its administrative process:
 C.C.B. argues that the structure of DHHS's hearing process entails a conflict of interest in that the administrative law judge who presided over the administrative hearing is part of the Office of Chief Counsel and subordinate to the chief counsel. Thus, according to C.C.B., because the administrative law judge and the prosecutor come from the same agency, in which the judge is subordinate to the chief prosecutor, there is a violation of C.C.B.'s right to due process of law under the Fourteenth Amendment to the United States Constitution, as well as article 2, section 8, of the Arkansas Constitution.[3]
The court recognized that a party is entitled to due process in administrative agency proceedings.[4] But it concluded that there was no denial of due process where the allegation was based solely on DHS's organizational structure:
 This allegation standing alone is insufficient to demonstrate bias or even an appearance of bias. As the Supreme Court has recognized, the combination of investigative and adjudicative functions does not, without more, constitute a due-process violation. See Withrow v. Larkin, 421 U.S. 35 (1975). There, the Court stated: *Page 4 
 The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.
 Id. at 47. While the Court in Withrow cautioned that the dual functions of investigation and adjudication could certainly give rise to a due-process violation, it made clear that such a scheme does not automatically result in such a violation.
 In sum, this court has concluded that an appellant, in attacking an administrative procedure on the basis of a denial of due process, has the burden of proving its invalidity. Omni Farms, Inc. v. AP L, 271 Ark. 61, 607 S.W.2d 363 (1980). Appellant has not demonstrated that he was denied due process under either the Fourteenth Amendment or article 2, section 8 simply based on the statutory scheme and procedures in place in this case.[5]
 Question 2 — If a constituent believes impartiality [sic]and/or judicial bias has occurred in the handling of their specificcase, are there legal avenues pursuable outside the DHS legaldepartment and its sections?
I assume that the "specific case" to which this question refers is one of adjudication by the agency, where an agency hearing has been held pursuant to law and there is a right to seek judicial review of final agency action.[6] The avenue for relief in that circumstance is to seek judicial review of the agency decision.[7] *Page 5 
 Question 3 — What is the purpose of disallowing family memberswho have not been formally accused of agency violations to carry outthe duties of the individual(s) under investigation? What is thelegal basis for the specific exclusion?
The answer to the first part of this question is found in the Participant Exclusion Rule:
 DHS will conduct business only with responsible participants. Participants will be excluded from participation in DHS programs not as penalty, but rather to protect public funds, the integrity of publicly funded programs, and public confidence in those programs. It is also the intent of this policy to prevent excluded participants from substituting others, usually immediate family members, as surrogates to continue the practices that caused DHS to exclude the participant.[8]
In addressing the rule's purpose, my immediate predecessor also observed the following:
 It has been stated in a similar context that "the rationale for extending a debarment or suspension to affiliates is to prevent the actual wrongdoer from using the affiliate to circumvent its exclusion." Gordon, Suspension and Debarment from Federal Programs, Pub. Cont. L.J. 573, 588 (Summer 1994). Obviously, the exclusion of one party from contracting with the state could be circumvented if the contracting party could continue to reap the same benefits by utilizing immediate family members or close associates to contract under another name.[9]
I agree in all respects with these observations. As for the legal basis for the exclusion, the Participant Exclusion Rule does not state the basis, but I believe it is implied from DHS's statutory charge to administer program(s). As my predecessor noted in the aforementioned opinion:
 The exact statutory authorization for the promulgation of Policy 1088 [the Participant Exclusion Rule] is not stated. The policy itself does not indicate whether it is adopted under the authority of A.C.A. § 19-11-245 (the portion of the "Arkansas Purchasing Law" governing debarment or suspension) (see also, Arkansas Office of Financial Services "Contract Manual," Chapter 5) and/or under one or more specific federal regulatory schemes such as 42 U.S.C. § 618 and 42 U.S.C. § 9858 and 45 C.F.R., Part 98 *Page 6 
(governing distribution of federal Child Care and Development Funds); or 42 U.S.C. § 1758; 1759a; 1765 and 1766 and 7 C.F.R., Part 226 (governing the Child and Adult Food Care Program); or under some type of authority implied from DHS's charge to administer such programs. See A.C.A. 20-78-205(b)(1) (requiring the DHS Division of Child Care and Early Childhood Education to administer the Child Care and Development Block Grant and other child care funds, state and federal). See also e.g., West v. Bergland, 611 F.2d 710 (8th Cir. 1979) (discussing implied authority of Secretary of Agriculture to suspend provision of meat grading services and relying upon Gonzales v. Freeman, 118 U.S. App. D.C. 180, 334 F.2d 570 (D.C. Cir. 1964), which found implied authority for the Secretary of Agriculture's debarment process). Reference to the particular facts surrounding the exclusion of a contractor may be necessary to determine the precise statutory sanction for the application of the policy in particular instances.[10]
 Question 4 — The constituent feels a disproportionate amountof individuals/families directly affected by the1088 Exclusion Rule are members of a minority group. Doesthis rule have a disparate impact on a certain racial class?
A racially disproportionate impact can be relevant in connection with a claim of racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.[11] I am unable to determine whether the Participant Exclusion Rule has such an impact because that entails a factual inquiry outside the scope of this opinion. It must also be recognized, however, that evidence of differential treatment ordinarily will not, standing alone, state a cause of action under the Equal Protection Clause:
 Our decision last Term in Washington v. Davis, 426 U.S. 229 (1976), made it clear that official action will not be held unconstitutional solely because it results in a racially disproportionate impact. `Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination.' Id., at 242. Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Although some contrary indications may be drawn from some of our cases, [footnote omitted] the holding in Davis
reaffirmed a principle well established in a variety of contexts. [Citations omitted.] Determining whether invidious discrimination purpose was a motivating factor demands *Page 7 
a sensitive inquiry into such circumstantial and direct evidence of intent as may be available. The impact of the official action — whether it `bears more heavily on one race than another,' Washington v. Davis, supra, at 242 — may provide an important starting point. Sometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face. Yick Wo v. Hopkins, 118 U.S. 356 (1886); Guinn v. United States, 238 U.S. 347 (1915); Lane v. Wilson, 307 U.S. 268 (1939); Gomillion v. Lightfoot, 364 U.S. 339 (1960). The evidentiary inquiry is then relatively easy. [Footnote omitted.] But such cases are rare. Absent a pattern as stark as that in Gomillion or Yick Wo, impact alone is not determinative, [footnote omitted] and the Court must look to other evidence. [Footnote omitted.][12]
Thus, even assuming it is established that the Participant Exclusion Rule adversely affects a greater proportion of one race than another, the probative worth of that evidence depends on all of the surrounding facts and circumstances.[13]
Deputy Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] This rule is entitled the "DHS Participant Exclusion Rule." Ark. Admin. Code 16.14.2 — 1088 (West, Westlaw 2010). It is a policy that governs the exclusion of certain persons from contracting with DHS. The rule's application and causes for exclusion are found in section 1088.2.2 and 1088.2.3. Exclusion applies to participants, as defined, and to the following persons and entities pursuant to section 1088.2.6:
 A. All the participant's related parties, and the heirs and assigns of the participants and related parties.
 B. The participant's immediate family members in order to prevent continued wrongdoing via a surrogate. Generally, immediate family members will be excluded from participation in any entity to which the excluded participant was a related party, any successor entity, or a start-up entity in the same or a similar program.
"Related Party" is defined as "a person or an entity associated or affiliated with, or which shares common ownership, control, or common board members, or which has control of or is controlled by the participant." Section 1088.2.1P. "Immediate Family Member" means "spouse; natural or adoptive parent, child, or sibling; step-parent, child or sibling; father, mother, brother, sister, son or daughter-in-law; grandparent or grandchild." Section 1088.2.1L.
[2] Section 1088.1.0.
[3] 368 Ark. at 544.
[4] Id. at 545.
[5] Id. at 546.
[6] See A.C.A. § 25-15-201 et seq.
(Repl. 2002 and Supp. 2009) (the Arkansas Administrative Procedure Act).
[7] Id. at-212.
[8] Section 1088.1.0 (entitled "Purpose") (emphasis added).
[9] Ark. Op. Att'y Gen. 2004-305.
[10] Op. Att'y Gen. 2004-305 at n. 1.
[11] Village of Arlington Heights v. Metropolitan HousingDevelopment Corp., 429 U.S. 252, 266 (1977).
[12] Id.
[13] See Inmates of Nebraska Panel, etc. v. Greenholtz,567 F.2d 1368, 1374-75 (8th Cir. 1977). *Page 1